FREDERICK A. WYATT, petitioner.

Hampden. September 10, 1998. - November 6, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Sex Offender. Constitutional Law,* Sex offender, Double jeopardy. *Due Process of Law,* Sex offender. *Practice, Civil,* Sex offender, Appeal, Instructions to jury, New trial, Judicial discretion. *Evidence,* Sex offender, Relevancy and materiality, Expert opinion.

The Commonwealth may appeal from any ruling or judgment adverse to it in a proceeding under G. L. c. 123A, whether the adjudication has been made by a judge or a jury. [350-351]

In a proceeding under G. L. c. 123A, § 9, the judge correctly instructed the jury, in his instruction on the Commonwealth's burden of proof, that the petitioner was presumed not to be a sexually dangerous person [351-353]; and there was no merit to the claim by the Commonwealth that the instruction "negated" the evidence of the petitioner's prior adjudication as a sexually dangerous person [353-354].

In a proceeding under G. L. c. 123A, § 9, the judge's instruction to the jury to determine whether the petitioner "is" sexually dangerous was correct. [354-355]

In a proceeding under G. L. c. 123A, § 9, the judge properly admitted in evidence the petitioner's testimony regarding the adequacy of the treatment available to him and the conditions of his confinement at the treatment center, which was relevant to counter the Commonwealth's expert testimony that the petitioner's refusal to participate in the treatment offered was evidence that the petitioner remained sexually dangerous [355-358], and the judge's instructions on that testimony limited any prejudicial impact on the jury [358-359].

A Superior Court judge did not abuse his discretion in denying the Commonwealth's motion for a new trial in a proceeding under G. L. c. 123A, § 9, after a jury had concluded that the defendant was not a sexually dangerous person. [359-361]

PETITION filed in the Superior Court Department on February 11, 1997.

The case was tried before *Patrick F. Brady,* J., and a motion for a new trial was heard by him.

The Supreme Judicial Court granted an application for direct appellate review.

*Ellyn H. Lazar*, Special Assistant Attorney General, for the Commonwealth.

*Chauncey B. Wood (John G. Swomley* with him) for the petitioner.

MARSHALL, J. On February 11, 1997, the petitioner, Frederick A. Wyatt, filed a petition pursuant to G. L. c. 123A, § 9, seeking to be discharged from his commitment to the Massachusetts Treatment Center (center)[1] as a sexually dangerous person.[2] On April 8, 1998, after a six-day trial, a jury in the Superior Court found that the petitioner is not sexually dangerous, as defined by G. L. c. 123A, § 1.[3] That same day, a judge in the Superior Court entered a judgment ordering him discharged from custody on April 21, 1998.[4] On April 15, 1998, the Commonwealth filed a motion for judgment notwithstanding the verdict or, in the

[1]On January 14, 1994, the Legislature transferred control of the Massachusetts Treatment Center (center) from the Department of Mental Health to the Department of Correction and renamed it the Nemansket Correctional Center. St. 1993, c. 489, § 2. The Commissioner of Correction has determined that the center should continue to be referred to as the Massachusetts Treatment Center, apparently in deference to members of the Native American community who objected to the use of the name Nemansket to describe a center for sexually dangerous persons.

[2]General Laws c. 123A, § 9, authorizes a person who is committed to the treatment center to file a petition for examination and discharge. The statute provides that "[u]nless the court finds that such person remains a sexually dangerous person [SDP], it shall order such person to be discharged from the treatment center," unless the petitioner's criminal sentence has not yet expired. G. L. c. 123A, § 9. In 1990, the Legislature repealed sections of G. L. c. 123A that authorized the initial adjudication of a person as an SDP, and subsequent commitment to the center. G. L. c. 123A, §§ 3-6, repealed by St. 1990, c. 150, § 304. Petitioners, like Wyatt, who had been committed to the center prior to September 1, 1990, may petition for discharge once every twelve months, as provided in § 9. St. 1990, c. 150, § 104.

[3]General Laws c. 123A, § 1, defines a "sexually dangerous person" to be:

> "any person previously adjudicated as such by a court of the Commonwealth and whose misconduct in sexual matters indicates a general lack of power to control his sexual impulses, as evidenced by repetitive or compulsive sexual misconduct by either violence against any victim, or aggression against any victim under the age of sixteen years, and who, as a result, is likely to attack or otherwise inflict injury on such victims because of his uncontrolled or uncontrollable desires."

[4]The judge imposed a waiting period prior to the petitioner's release to permit the Commonwealth to appeal from the judgment. See *Hill, petitioner*, 422 Mass. 147, 157, cert. denied, 519 U.S. 867 (1996).

alternative, a new trial, and a motion to stay the petitioner's discharge pending resolution of its posttrial motions and appeal. On April 16, 1998, the judge denied both motions.

On April 17, 1998, the Commonwealth petitioned a single justice of the Appeals Court for a stay pending appeal, or for a temporary stay pending resolution of its motion for a stay pending appeal. The single justice stayed the petitioner's discharge pending appeal or further order of the Appeals Court. On April 23, 1998, the Commonwealth filed in the Appeals Court a notice of appeal from the denial of its posttrial motion and from the judgment entered in favor of the petitioner. We granted the Commonwealth's application for direct appellate review.[5] We find no error in the judge's rulings, and affirm the judgment.

1. We summarize the relevant facts in evidence, reserving for later discussion additional evidence in connection with the issues raised. In 1974, the petitioner was convicted of indecent assault and battery for forcing a thirteen year old boy to perform oral sex on him and to submit while the petitioner performed oral sex on the boy. The petitioner was sentenced to a two-year term of imprisonment in a house of correction.[6] The record does not reflect on what date or on what terms he was released from imprisonment.

On July 20, 1979, the petitioner pleaded guilty to an indictment charging him with assault and battery by means of a dangerous weapon. The petitioner had forced a sixteen year old boy to perform oral sex on him. He was sentenced to serve a term of imprisonment of from three to five years, the sentence to be served in the Hampshire County house of correction. Ten days after he was released on parole from that sentence, the petitioner committed further sexual offenses. Specifically, on February 15, 1983, the petitioner pleaded guilty to an indictment charging him with three counts of rape of a child by force, and one count each of assault by means of a dangerous weapon and kidnapping. The petitioner had forced a fourteen year old boy to perform oral sex on him and to submit while he performed oral sex on the boy. The petitioner was sentenced to concurrent terms of from eight to twelve years for each of the

[5]On April 27, 1998, the petitioner petitioned a single justice of this court pursuant to G. L. c. 211, § 3, for an order vacating the stay of his discharge. That petition was denied on May 15, 1998.

[6]A different part of the record indicates that the petitioner received a three-year sentence in a house of correction for his 1974 offense.

rape of a child and kidnapping convictions, and a concurrent term of not more than five and not less than three years for the assault conviction, at Massachusetts Correctional Institution at Cedar Junction.

After his 1983 convictions, upon the Commonwealth's petition pursuant to G. L. c. 123A, § 6, a judge in the Superior Court determined the petitioner to be a sexually dangerous person (SDP). On December 20, 1983, the judge committed the petitioner to the center for a minimum of one day and a maximum of life. G. L. c. 123A, § 5. The petitioner's criminal sentence was completed on December 1, 1993. He has remained in custody at the center since that time.

2. As a threshold issue, we address the petitioner's claim that the Commonwealth may not appeal a judgment entered upon a jury's determination that a petitioner is not sexually dangerous.[7] In *Hill, petitioner*, 422 Mass. 147, cert. denied, 519 U.S. 867 (1996), we considered the Commonwealth's right to appeal a judge's determination that a petitioner was no longer sexually dangerous, and concluded that neither double jeopardy nor substantive due process concerns prevented the appeal. *Id.* at 151, 155.[8] We stated, in dicta, that allowing the Commonwealth to invoke appellate review of an adjudication of sexual dangerousness was "particularly appropriate where the right to a trial by jury is not implicated and the appellate process does not trench on a jury's historic preserve." *Id.* at 155. Relying on

[7]General Laws c. 123A, § 9, now provides, in part: "In any hearing held pursuant to the provisions of this section, either the petitioner or the commonwealth may demand that the issue be tried by a jury. If a jury trial is demanded, the matter shall proceed according to the practice of trial in civil cases in the superior court." The Governor filed legislation in July, 1992, introduced in the House in February, 1993, which proposed an overhaul of the State's management of sexually dangerous persons. The legislation was filed in the wake of two murders, allegedly committed by a man who was judged to be no longer sexually dangerous and released from the center. It provided, inter alia, "that a jury not a judge will hear and decide whether an individual committed to the [center] remains sexually dangerous." 1993 House Doc. No. 1604, at 2. The Governor explained that "citizens ·who serve on juries are the people who assume the risk when a sex offender is released into the community and it is they who are best situated to feel the human reality of these cases." The legislation was enacted in January, 1994. St. 1993, c. 489, § 7, approved January 14, 1994.

[8]The Commonwealth had filed its appeal pursuant to G. L. c. 231, § 113, which states that "[a] party aggrieved by a final judgment of the superior court . . . may appeal therefrom. . . ."

that dicta, the petitioner argues that the Commonwealth may not seek review of a jury's adjudication of sexual dangerousness. That determination, he says, is analogous to an acquittal by a jury in a criminal trial, from which the Commonwealth could not appeal. We disagree.

We consistently have declined to equate civil hearings held pursuant to G. L. c. 123A with proceedings that result in criminal sanctions. *Hill, petitioner, supra* at 153 (double jeopardy not implicated in § 9 proceedings because statute does not intend or impose punishment); *Commonwealth* v. *Barboza*, 387 Mass. 105, 111-113, cert. denied, 459 U.S. 1020 (1982) (not all due process procedures applicable to criminal proceedings required in G. L. c. 123A proceedings). See *Sheridan, petitioner*, 422 Mass. 776, 779 (1996), and cases cited. There is no reason why the Commonwealth's right to appeal a determination of sexual dangerousness should depend on whether the determination is made by a judge or jury. Our reasoning in *Hill, supra*, that G. L. c. 123A is not punitive, applies with equal force to all determinations of sexual dangerousness; the trier of fact does not change the nature of the proceedings. Were we to rule otherwise, a petitioner challenging his continuing confinement in the center might invoke his statutory right to a trial by jury for the sole purpose of defeating the Commonwealth's right of appeal. Neither the statutory scheme nor any concerns of due process warrant that result. The Commonwealth may appeal from any ruling or judgment adverse to it in a c. 123A proceeding.

3. The Commonwealth contends that the judge erroneously instructed the jury that the petitioner was presumed not to be a sexually dangerous person.[9] The Commonwealth takes issue with the instructions on two grounds. First, it says, the judge concluded that his instruction on presumption was "constitution-

---

[9]The judge instructed the jury:

"[The petitioner] starts this trial presumed, as a matter of law, not to be a sexually dangerous person. The fact that he is alleged by the Commonwealth to be a sexually dangerous person and the fact that he was committed, and this is agreed, . . . in 1983 as a sexually dangerous person . . . is not evidence that he is a sexually dangerous person today. The Commonwealth has to prove that today [the petitioner] is a sexually dangerous person as defined by Chapter 123A. The presumption [that the petitioner] is not a sexually dangerous person alone is sufficient for you to find that he is not sexually dangerous unless you are satisfied beyond a reasonable doubt of his sexual dangerousness after

ally required." The judge reached no such conclusion.[10] He correctly determined that he was required to instruct the jury that the Commonwealth must prove beyond a reasonable doubt that a person is sexually dangerous. *Andrews, petitioner*, 368 Mass. 468, 489 (1975). He then instructed the jury on the presumption because, in his view, it "is part of the standard charge on proof beyond a reasonable doubt," and "[w]ithout reference in some form of words to the presumption of innocence, it is questionable whether a charge on proof beyond a reasonable doubt would pass muster."[11] The judge believed the instruction was necessary to give meaning to, and to focus the jury's attention

---

careful and impartial consideration of all of the evidence in the case. . . .

"I have told you that [the petitioner] is presumed not to be a sexually dangerous person until, he is proved by the Commonwealth to be a sexually dangerous person, and the burden of proof never shifts."

[10]In a criminal case, neither the Massachusetts Declaration of Rights nor the Federal Constitution requires a judge to instruct a jury on the presumption of innocence. *Commonwealth* v. *Drayton*, 386 Mass. 39, 46 (1982); *Kentucky* v. *Whorton*, 441 U.S. 786, 789 (1979). Jury instructions in a criminal trial are adequate if they "make clear that an indictment does not imply guilt, and that the jury must base their decision on the evidence, and not on 'suspicion or conjecture.' " *Drayton, supra*, quoting *Commonwealth* v. *DeFrancesco*, 248 Mass. 9, 13 (1924). A fortiori an instruction on the presumption of nonsexual dangerousness is not constitutionally required in a civil commitment proceeding under G. L. c. 123A.

[11]In his memorandum and order denying the Commonwealth's motion for a new trial based on its claim of the erroneous jury instruction, the judge made clear that in his view an instruction on a presumption was not mandated by constitutional considerations:

"Since *Andrews, petitioner*, 368 Mass. 468, 489-90 (1975), the law has required the Commonwealth to prove, beyond a reasonable doubt, that the petitioner in a c. 123A, § 9, petition is a sexually dangerous person whenever his petition for release is heard. The presumption of innocence (or, as modified to fit the case, the presumption that petitioner is not a sexually dangerous person) is part of the standard charge on proof beyond a reasonable doubt as set forth originally in *Commonwealth* v. *Webster*, 5 Cush. 295, 320 (1850) ('All the presumptions of law independent of evidence are in favor of innocence; and every person is presumed to be innocent until he is proven guilty.') The presumption of innocence is an integral part of the *Webster*-verbatim charge and the so-called 'modern syntax' version of *Webster*, which I used in this case. See *Commonwealth* v. *Latimore*, 423 Mass. 129, 139-140 n.9 (1996). Without reference in some form of words to the

on, the requirement that the Commonwealth had the burden to prove, beyond a reasonable doubt, that a petitioner is sexually dangerous. Cf. *Commonwealth* v. *Boyd*, 367 Mass. 169, 188 (1975).

Second, the Commonwealth argues that it was "per se" prejudicial error for the judge to give the challenged instruction because the instruction "essentially negated" the Commonwealth's evidence of the petitioner's prior adjudication as an SDP and his prior misdeeds. We disagree. The judge carefully explained to the jury the elements of sexual dangerousness, and the nature of the Commonwealth's burden to prove each element beyond a reasonable doubt.[12] Regarding the first element, the petitioner's prior adjudication as an SDP, the judge informed the jury that "the parties have stipulated that [the petitioner] was committed as a sexually dangerous person pursuant to Chapter 123A, on December 20, 1983." He thereby told the jury that the Commonwealth had met its burden of proof as to that element. Moreover, the jury were well aware from repeated mention of the fact throughout trial that the petitioner previously had been adjudicated an SDP. The claim that the judge's instruction on a presumption negated that evidence is frivolous.

As to the petitioner's prior misdeeds, the jury considered extensive written and testimonial evidence of his previous crimes.[13] The Commonwealth also described the petitioner's

presumption of innocence, it is questionable whether a charge on proof beyond a reasonable doubt would pass muster. See *Commonwealth* v. *Viera*, 42 Mass. App. Ct. 916 (1997). See also *Commonwealth* v. *Boyd*, 367 Mass. 169, 188 (1975) ('the presumption of innocence serves as a focus on the prosecutor's burden of producing evidence of guilt and persuading the jury of the guilt beyond a reasonable doubt')."

[12]The judge instructed the jury that the Commonwealth must prove beyond a reasonable doubt three elements of sexual dangerousness, as defined by G. L. c. 123A, § 1: (1) "[the petitioner] was previously adjudicated a sexually dangerous person by the Court of the Commonwealth"; (2) "a general lack of power to control sexual impulses as evidenced by a repetitive or compulsive sexual misconduct by [the petitioner], either by violence against any victim or aggression against a victim under the age of sixteen years"; and (3) "[the petitioner] is likely to attack or otherwise inflict injury on such victims because of his uncontrolled or uncontrollable desires."

[13]The jury heard testimony from three psychologists, expert witnesses for the Commonwealth, who discussed their respective understandings of the

criminal history in considerable detail in closing argument. The judge then instructed that:

> "in deciding the likelihood that [the petitioner] will attack or inflict injury, you are free to draw inferences based on [the petitioner's] past sexual misconduct and the testimony of the experts. Chapter 123A does not require evidence of contemporaneous or recent sexual misconduct indicating sexual dangerousness or indeed any evidence of sexual misconduct while in a secure environment."

The judge's instruction correctly made clear to the jury that they could and should consider the evidence of the petitioner's past sexual misconduct and could draw inferences based on that misconduct. In light of his explicit charge to the jury, and the extensive evidence regarding petitioner's earlier misdeeds, we conclude that the instruction on a presumption did not negate the Commonwealth's evidence.

The Commonwealth also argues that the judge erroneously instructed the jury to determine whether the petitioner "is" sexually dangerous, rather than whether he "remains" sexually dangerous.[14] This instruction, it claims, also prevented the jury from considering the petitioner's prior adjudication as an SDP. General Laws c. 123A, § 9, states that, "[u]nless the trier of fact finds that such person *remains* a sexually dangerous person, it shall order such person to be discharged from the treatment center" (emphasis supplied). In *Hill, petitioner, supra* at 156, we confirmed that the Commonwealth "bears the burden of establishing beyond a reasonable doubt that the petitioner continues to be an SDP at the time of the section nine hearing." See *Page* v. *Commonwealth*, 13 Mass. App. Ct. 384, 387 (1982) (petitioner must be found sexually dangerous at time of hearing). The judge instructed the jury that the petition "raises the issue of whether today [the petitioner] is a sexually dangerous

---

petitioner's crimes, heard the testimony of the petitioner himself about his crimes, and considered several evaluative reports introduced into evidence that documented in detail the crimes for which he was indicted, as well as describing other sexual misdeeds for which he had not been indicted.

[14]The judge instructed: "[the petitioner] has filed a petition which raises the issue of whether he today is a sexually dangerous person. The petitioner . . . is entitled to be discharged unless the Commonwealth proves beyond a reasonable doubt that he is a sexually dangerous person."

person." He instructed them to "focus on the here and now," observing that "[t]he Commonwealth bears the burden of proving that at this time [the petitioner] is a sexually dangerous person. . . ." Although an instruction that mirrored the statutory language would also suffice, the judge correctly instructed the jury to focus on the petitioner's present condition. The jury could not have determined that the petitioner no longer "remains" sexually dangerous without concluding that he "is" not sexually dangerous. See *Gagnon, petitioner*, 416 Mass. 775, 778 (1994), quoting *Davis, petitioner*, 383 Mass. 645, 649-650 (1981) ("[p]roceedings under G. L. c. 123A, § 9, are to determine the single issue whether or not the petitioner is a sexually dangerous person"). There was no error.

4. The Commonwealth argues that it is entitled to a new trial because the judge erroneously admitted in evidence testimony regarding the adequacy of treatment available to the petitioner and the conditions of confinement at the center. Any such evidence, it claims, is irrelevant to a determination of the petitioner's sexual dangerousness. We have reviewed the entire record, paying close attention to the evidence to which the Commonwealth takes exception, and conclude that no evidence was improperly admitted.

The Commonwealth sought to prove that the petitioner remains a sexually dangerous person because he had refused to participate in certain treatment. The Commonwealth elicited testimony from its three experts that the petitioner's refusal to participate in the treatment was an important factor contributing to the opinion of each. The Commonwealth repeated this theme in its opening statement and closing argument. In response, the petitioner sought to explain his refusal to participate, and to counter the Commonwealth's contention that his refusal was evidence of his continuing sexual dangerousness.

"Whether evidence is relevant is a question 'addressed to the sound discretion of the trial judge.' " *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 477 (1991), quoting *Commonwealth* v. *Booker*, 386 Mass. 466, 469 (1982), and cases cited. "The issue of 'relevancy is "a matter on which the opinion of the trial judge will be accepted on review except for palpable error." ' " *Id.*, quoting *Booker, supra* at 470, and *Commonwealth* v. *Young*, 382 Mass. 448, 463 (1981). We evaluate whether the admission of the challenged testimony constituted

palpable error. Section 9 hearings "are to determine the single issue whether or not the petitioner is a sexually dangerous person . . . [and] should be restricted to the sole issue for which they were intended." *Gagnon, petitioner, supra* at 778, quoting *Davis, petitioner, supra* at 649-650. The judge adhered to that admonishment, and admitted evidence regarding the adequacy of petitioner's treatment only when it countered the Commonwealth's theory.[15]

The Commonwealth called three expert witnesses: Dr. William Meadows, a forensic psychologist at the center and a member of the Community Access Board[16]; Dr. Don Greif, a clinical psychologist and qualified examiner[17]; and Dr. Ira Silverman, a forensic psychologist and qualified examiner. All three opined that the petitioner remains sexually dangerous. The petitioner's refusal to participate in treatment at the center contributed to each expert's opinion. The petitioner countered the expert opinions by vigorously cross-examining the expert

---

[15]The Commonwealth filed a motion in limine to exclude "all evidence and reference to the adequacy of the petitioner's treatment." It objected to "any reference during the hearing, either in the description of the case, during testimony or closing arguments, or in the instructions to the jury, about the petitioner's opinion about the treatment that he is receiving." In denying the Commonwealth's motion the judge stated:

> "Petitioner's resistance to treatment is a major factor in the opinion of the Commonwealth's experts that he remains sexually dangerous. How could I refuse to allow the [petitioner] to explain his reasons for that which may be quite plausible?"

[16]The Community Access Board (CAB) is "a board consisting of five members appointed by the commissioner of correction, whose function shall be to consider a person's placement within a community access program and conduct an annual review of a person's sexual dangerousness." G. L. c. 123A, § 1. The CAB conducts an evaluation and makes a report when a petitioner files a § 9 petition for discharge.

[17]A qualified examiner is either a licensed psychiatrist or a licensed psychologist with "two years of experience with diagnosis or treatment of sexually aggressive offenders and is designated by the commissioner of correction." G. L. c. 123A, § 1. When a petitioner files for discharge under § 9, "[t]he court shall order the petitioner to be examined by two qualified examiners, who shall conduct examinations, including personal interviews, of the person on whose behalf such petition is filed and file with the court written reports of their examinations and diagnoses, and their recommendations for the disposition of such person. Said reports shall be admissible in a hearing pursuant to this section." G. L. c. 123A, § 9.

witnesses,[18] and through the testimony of Paula Erickson, a former therapist at the center.[19, 20] The Commonwealth sought to exclude her testimony, claiming that she would testify to "a conspiracy theory of incredible proportions dealing with the treatment center." The judge limited Erickson's testimony to "her involvement with [the petitioner] as far as treatment is concerned . . . [and] the types of treatment actually provided during the times that she was at the center." The judge emphasized: "I don't know what you mean by vast conspiracy theory. But obviously I'm not going to let her have carte blanche just to criticize the institution that she may have disagreed with." Similarly, the judge "constrain[ed] [the petitioner's attorney] not to go into questions of opinion from Ms. Erickson,"

---

[18]For example, on cross-examination, the petitioner elicited the following testimony from Dr. Greif:

Q.:  "Well if you [an individual at the center] have a perfectly good or even great relationship with a therapist for example and you learn that the institution no longer has money for that therapist and they get rid of that therapist, do you see any relationship between that person's ability to receive further treatment and that occurrence?"

A.:  "Yeah. I think a situation like that could, for — It would be likely that most patients in that situation would feel — would have feelings of anger."

Q.:  "That would not be misplaced against the situation would it?"

A.:  "Feelings of anger that in my estimation would be valid."

Q.:  "And would be a non-sexually dangerous explanation for refusal to cooperate with that institution at a later date, wouldn't it?"

A.:  "Yes."

[19]Ms. Erickson was employed at the center from 1988 to 1992. During her employment, she supervised one of petitioner's therapists, Connie Katsampas. Ms. Erickson testified that Ms. Katsampas was "bumped" from her position by an employee with more seniority after staff reductions following the privatization of the center. She testified that the petitioner had made progress with Ms. Katsampas, and was "very upset about losing her" following her departure.

[20]The only other witness for the petitioner was his brother, a director of music and literature at a church in Ohio. He testified that the petitioner could live with him in Ohio on release, and that he had explored treatment options available to the petitioner there.

and permitted her to "deal with factual matters in which she was involved" only.

Evidence introduced by the Commonwealth was hotly contested. The judge remained alert to the requirement that the trial was to determine a "single issue," the petitioner's sexual dangerousness. *Gagnon, petitioner, supra* at 778, quoting *Davis, petitioner, supra* at 649-650. He kept a tight rein on petitioner's counsel, making clear that he would not tolerate efforts to attack the conditions at the center or the viability of treatment programs unless they were probative of the petitioner's sexual dangerousness. The Commonwealth's argument rests in large measure on its contention that the judge improperly permitted the petitioner to present a "constitutional" challenge to his commitment. See *Gagnon, petitioner, supra* (§ 9 hearing is not appropriate forum in which to make constitutional challenge to petitioner's commitment to center). The judge effectively countered that claim.[21] We conclude that the judge committed no error in determining that certain, but not all, of the petitioner's proffered evidence regarding the adequacy of his treatment and his conditions of confinement was relevant.

The Commonwealth contends that, even if such evidence was relevant, its probative value was far outweighed by its prejudicial impact on the jury. It points to counsel's opening statement and closing argument that the petitioner was being held in a penal rather than a remedial facility. At trial the Commonwealth objected to counsel's opening statement because it was argumentative, not because counsel described the prison-

---

[21]In his memorandum and order denying the Commonwealth's posttrial motions, the judge stated:

"[The petitioner]'s evidence was not a constitutional challenge. [He] had been refusing treatment at the treatment center for several years for his own reasons. Whether they were good reasons or bad reasons was for the jury to consider. Part of the Commonwealth's case that he is a sexually dangerous person is that without treatment he will not get better. It must be open to a petitioner in [the petitioner]'s situation to explain the reasons why he refuses treatment. Certainly the jury could consider whether the treatment, or lack thereof, was such as to justify [the petitioner]'s anger and/or refusal to participate. It was likewise appropriate for [the petitioner] to testify, as he did, that in part he declined to speak to therapists when what he said to them was not confidential but could be, and would be, used against him in court to keep him at the center."

like conditions at the center. It also did not object on these grounds to his closing argument. In any event, we do not accept the Commonwealth's characterization that the judge permitted the petitioner to claim "in essence" that he should be released because of the conditions in the center. To the contrary, the judge carefully instructed the jury that they were to determine whether the petitioner is sexually dangerous, "regardless of any opinion you may have as to the adequacy or the appropriateness of the treatment being offered to [petitioner] at the Center and regardless of any opinion you may have as to whether [petitioner] is being offered the best kind of treatment and regardless of any opinion you may have as to the environment or staff of the Center."[22] We presume that the jury followed the judge's instructions. See *Mailman's Steam Carpet Cleaning Corp.* v. *Lizotte*, 415 Mass. 865, 870 (1993), citing *O'Connor* v. *Raymark Indus., Inc.*, 401 Mass. 586, 590 (1988); *Saragan* v. *Bousquet*, 322 Mass. 14, 20 (1947). We are satisfied that the judge appropriately limited the evidence to testimony relevant to a determination of the petitioner's sexual dangerousness.

5. Finally, the Commonwealth argues that a new trial should be granted because the verdict was against the weight of the evidence.[23] It asserts that it presented uncontroverted and "substantial" evidence of the petitioner's sexual dangerousness, and that there was "almost no" evidence to the contrary. The denial of a motion for a new trial "on the ground that the verdict is against the weight of the evidence rests in the discretion of the judge." *Turnpike Motors, Inc.* v. *Newbury Group, Inc.*, 413 Mass. 119, 127 (1992), quoting *Robertson* v. *Gaston Snow & Ely Bartlett*, 404 Mass. 515, 520, cert. denied, 493 U.S. 894 (1989), quoting *Bergdoll* v. *Suprynowicz*, 359 Mass. 173, 175 (1971). "[A] judge should exercise this discretion only when the verdict 'is so greatly against the weight of the evidence as to induce in his mind the strong belief that it was not due to a careful consideration of the evidence, but that it was the product

---

[22]The judge also instructed the jury, at the beginning of trial, after opening arguments, and prior to their deliberations, that the arguments of counsel were not evidence.

[23]After the jury verdict, the Commonwealth filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial. In his posttrial order, the judge noted that the Commonwealth had not moved for a directed verdict at the close of the evidence, and for that reason was not entitled to a judgment notwithstanding the verdict, pursuant to Mass. R. Civ. P. 50 (b), 365 Mass. 814 (1974).

of bias, misapprehension or prejudice.' " *Id.*, quoting *Scannell* v. *Boston Elevated Ry.*, 208 Mass. 513, 514 (1911). We will disturb a judge's denial of a new trial only if the judge has abused his discretion. *Id.*, citing *Robertson* v. *Gaston Snow & Ely Bartlett, supra* at 520-521.

The Commonwealth had the burden of proving beyond a reasonable doubt that the petitioner remains a sexually dangerous person under G. L. c. 123A, § 9. *Andrews, petitioner, supra* at 489-490. The petitioner need not produce any evidence that he no longer is sexually dangerous, and the Commonwealth's argument — to the extent that it rests on a claim to the contrary — fails.[24] See *Commonwealth* v. *DeMinico*, 408 Mass. 230, 235 (1990). The Commonwealth sought to prove the petitioner's sexual dangerousness through the testimony of its three experts. As the judge correctly noted in his posttrial memorandum and order, although a jury could have found the petitioner sexually dangerous, it was not bound to accept the opinions of those witnesses. "The law should not, and does not, give the opinions of experts on either side of . . . [an] issue the benefit of conclusiveness, even if there are no contrary opinions introduced at the trial." *Id.*, citing *Commonwealth* v. *Lamb*, 372 Mass. 17, 24 (1977), quoting *Commonwealth* v. *Smith*, 357 Mass. 168, 178 (1970). The experts' opinion that the petitioner was sexually dangerous did not "mandate a finding" of dangerousness. *DeMinico, supra* at 235. In the judge's view, the Commonwealth's argument "that the evidence entitled it to a judgment as a matter of law" is "utterly frivolous." Certainly in this civil proceeding, the Commonwealth was held to a high burden of proof. That a jury determined it had not met that burden is insufficient reason for us to conclude that the judge abused his discretion in denying its motion for a new trial.

The petitioner has a statutory right to challenge his continuing confinement at the center. "[U]nlike a criminal prisoner, the SDP is continuously evaluated to determine if treatment is necessary, and, if not, the petitioner will be released from the treatment center, either to serve out his sentence in a correctional institution or to return to society if his sentence has expired." *Hill, petitioner, supra* at 154. The Legislature has provided that either a judge or a jury may determine whether a petitioner

---

[24]The Commonwealth argues, for example, that "[t]here was no expert testimony that the petitioner was no longer sexually dangerous."

remains sexually dangerous. G. L. c. 123A, § 9.[25]   In this case, the petitioner invoked his statutory right to have that determination made by a jury. The jury heard the testimony of expert witnesses for the Commonwealth. The Commonwealth also called the petitioner as a witness, subjecting him to a rigorous examination over the course of two days. The jury had ample evidence on which to consider whether the petitioner remains sexually dangerous. The judge also reminded the jury prior to their deliberations that "nothing in the statute requires a person who has been civilly committed to spend time in a transition program before being discharged. Therefore if you conclude that the Commonwealth has not proved beyond a reasonable doubt that [the petitioner] is a sexually dangerous person, you must answer the question on the special verdict form, 'No' regardless of any views you may have about the benefits of an individual spending time in a transition program before being discharged." The Commonwealth makes no claim that the verdict was the product of bias, misapprehension, or prejudice. We see no reason to conclude that the judge abused his discretion in deciding that the jury's verdict was based on a "careful consideration of the evidence." *Turnpike Motors, Inc., supra* at 127.

*Judgment affirmed.*

---

[25]See note 7, *supra*.