# Robert LeSage, petitioner.

No. 08-P-1268.

Suffolk. November 10, 2009. - April 9, 2010.

Present: Rapoza, C.J., Smith, & Lenk, JJ.

*Sex Offender. Evidence,* Sex offender, Expert opinion, Cross-examination, Relevancy and materiality. *Witness,* Expert. *Practice, Civil,* Instructions to jury, Sex offender. *Words,* "Qualified examiner."

At the trial on a petition seeking the petitioner's release from civil commitment as a sexually dangerous person, the judge abused her discretion in permitting, over objection, a psychologist to testify as a qualified examiner, where the psychologist did not meet the requirement of G. L. c. 123A that she have two years' experience with the diagnosis or treatment of sexually aggressive offenders [571-573]; moreover, where the evidence that the petitioner remained a sexually dangerous person who was at high risk of reoffending was strong but not overwhelming, this court could not say that the objected-to error did not influence the jury or had but very slight effect [573].

At the trial on a petition seeking the petitioner's release from civil commitment as a sexually dangerous person, the judge was not required to instruct the jury that the petitioner was presumed not to be sexually dangerous, and the judge's instructions to the jury effectively communicated their task and the Commonwealth's burden. [573-574]

At the trial on a petition seeking the petitioner's release from civil commitment as a sexually dangerous person, the judge properly excluded testimony from two witnesses that was irrelevant or inadmissible hearsay, while properly allowing testimony from those same witnesses that was plainly relevant to the jury's determination of sexual dangerousness. [574]

Petition filed in the Superior Court Department on April 30, 2003.

The case was tried before *Nancy Staffier-Holtz,* J.

*Harry L. Miles* for the petitioner.

*Brian P. Mansfield* for the Commonwealth.

Smith, J. On April 30, 2003, Robert LeSage filed a petition pursuant to G. L. c. 123A, § 9, claiming that he is no longer a

sexually dangerous person, and seeking release from his civil commitment to the Massachusetts Treatment Center (treatment center). A jury returned a verdict stating that the petitioner remained a sexually dangerous person as defined by G. L. c. 123A, § 9.

On appeal, the petitioner argues that the judge committed error in (1) allowing an unqualified person to testify as a qualified examiner; (2) failing to instruct the jury that the petitioner is presumed to be not sexually dangerous; and (3) limiting cross-examination of the experts. Finally, the petitioner claims that the cumulative effect of the errors demand reversal.

*Background.* At trial, the Commonwealth presented its case through the testimony of Dr. Susan J. Lewis and Dr. Christine Schnyder-Pierce, both of whom testified as qualified examiners appointed pursuant to G. L. c. 123A, § 9. They testified that the petitioner remained a sexually dangerous person who was at high risk of reoffending. A member of the community access board (CAB) also testified that the petitioner remained sexually dangerous. Their respective reports were allowed in evidence. The petitioner's expert, a licensed psychologist, opined that the petitioner was no longer a sexually dangerous person and would not reoffend if released from a secure facility.

We summarize the evidence presented at trial and the reasonable inferences that the jury could draw from it. At the time of the trial, the petitioner was sixty-six years old. It was undisputed that he had admitted to various individuals that he had sexual contact, over decades, with at least thirty youths, mostly young boys.

In 1975, warrants issued for the petitioner's arrest as a result of information that he had sexually assaulted Tom,[1] a fourteen year old boy, on several occasions. In 1976, the petitioner killed Tom because he feared that Tom would reveal the sexual assaults to the police. He fled to Iowa where, in 1983, he was arrested. While in Iowa, he assaulted four or five boys; one of them was his stepson. He was returned to Massachusetts and pleaded guilty to manslaughter for the 1976 slaying and was sentenced to from eighteen to twenty years in the Massachusetts Correctional Institution at Cedar Junction. He was committed to

[1] A pseudonym.

the treatment center on November 26, 2001, after a hearing wherein he was found to be a sexually dangerous person.

According to Dr. Lewis and Dr. Schnyder-Pierce, the petitioner suffered from both a mental abnormality (pedophilia) and a personality disorder. The personality disorder manifested itself in antisocial behavior, including engaging in manipulative and deceptive behavior. Despite his mental problems, the petitioner did not avail himself of any treatment at the treatment center. Finally, the petitioner's offenses were both repetitive and compulsive. Therefore, in the opinion of Dr. Lewis, Dr. Schnyder-Pierce, and the member of CAB, the petitioner has not eliminated or reduced his risk to reoffend, does not have the ability to control his sexual impulses, and remains at high risk to reoffend in sexual matters in the future.

*Discussion.* 1. *Admission of Dr. Lewis's opinion testimony as a qualified examiner.* A "qualified examiner" is defined by G. L. c. 123A, § 1, amended by St. 1993, c. 489, § 1, as

> "a physician who is licensed pursuant to section two of chapter one hundred and twelve who is either certified in psychiatry by the American Board of Psychiatry and Neurology or eligible to be so certified, or a psychologist who is licensed pursuant to sections one hundred and eighteen to one hundred and twenty-nine, inclusive, of chapter one hundred and twelve; provided, however, that the examiner has had two years of experience with diagnosis or treatment of sexually aggressive offenders and is designated by the commissioner of correction. A 'qualified examiner' need not be an employee of the department of correction or of any facility or institution of the department."

Dr. Lewis was designated by the commissioner of correction as a qualified examiner. The petitioner argues that Dr. Lewis should not have been allowed to testify as a qualified examiner because her testimony revealed she did not meet the statutory requirement of having "two years of experience with diagnosis or treatment of sexually aggressive offenders."

The issue as to Dr. Lewis's qualifications arose in the following manner. Prior to Dr. Lewis's testimony, the petitioner filed a motion for a voir dire to explore Dr. Lewis's qualifications as a qualified examiner. The petitioner stated that Dr. Lewis's resume

did not demonstrate that she possessed the statutory qualifications and experience necessary to testify as a qualified examiner and, thus, she lacked the expertise to offer her opinion that the petitioner remained a sexually dangerous person. The motion was denied. The petitioner moved for a mistrial. The judge denied the motion.[2]

At trial, the Commonwealth questioned Dr. Lewis about her qualifications as a qualified examiner. In line with her resume, Dr. Lewis testified as to her educational background and her employment as a forensic psychologist at Massachusetts General Hospital. Dr. Lewis also testified that she worked for a period of time at Massachusetts Correctional Institution at Framingham (M.C.I., Framingham) and "ran a sex offender program there for women," but was not asked about the specifics of that program or her role in it. She stated that during her employment at Massachusetts General Hospital, and prior thereto, of the various groups she worked with, "between 25 and 35 percent of the individuals [had] sex offender charges." Dr. Lewis further testified about her present duties as a forensic psychologist. Those duties consisted of evaluating individuals who are mentally ill

[2]Dr. Lewis's resume indicates that she is a forensic psychologist in Massachusetts and has been so licensed for fifteen years or more. She has master's degrees in education and psychology, a Ph.D. in psychology, and a law degree. At the time of trial, she was employed as a forensic psychologist at Massachusetts General Hospital.

We note that Dr. Lewis's resume demonstrated her experience as a forensic psychologist by stating that she had experience in the evaluation of individuals for (1) competency to stand trial, (2) their dangerousness to themselves or others, and (3) their criminal responsibility and certain other statutorily required evaluations. Her resume, however, lacked specific information as to her experience in the diagnosis or treatment of sexually aggressive offenders. The only reference in the resume to Dr. Lewis's experience in the diagnosis and treatment of sex offenders, let alone sexually aggressive offenders, is a statement that in the years 2002 and 2003, she was a program manager at Massachusetts Correctional Institution at Framingham and was "[r]esponsible for the implementation of a Sexual Offender Treatment Program."

We recognize that a judge is not required to hold a voir dire before qualifying an expert witness. *Commonwealth* v. *Calderon*, 65 Mass. App. Ct. 590, 593 (2006). In this matter, a voir dire would have been helpful in determining, before Dr. Lewis testified, her experience in diagnosing or treating sexually aggressive offenders. We are not suggesting, however, that every time a qualified examiner is scheduled to testify, there must be a voir dire before he or she testifies.

to ascertain whether they were competent to stand trial, whether they were dangerous to themselves or others, and certain other statutorily required evaluations. She stated that she made recommendations to courts in regard to "dangerousness" due to mental illness but her recommendations did not include "sexual dangerousness."

The balance of Dr. Lewis's testimony on direct examination concerned the various steps that she employed in reaching her opinion that the petitioner remained sexually dangerous. Those steps included the examination of relevant documents and a personal interview with the petitioner.

Near the end of her direct examination, Dr. Lewis was asked the following question:

> Q.: "Doctor, if I could just back you up for a minute. In terms of your background in assessing and treating sex offenders, personally how long have you been doing that?"
>
> A.: "Just about ten years."

Later, the petitioner's counsel, in cross-examination, questioned Dr. Lewis in regard to her experience in evaluating sex offenders. Referring back to her answer on direct examination as to her length of experience in assessing and treating sex offenders, the petitioner's counsel asked:

> Q.: "So when you say you've spent ten years evaluating sex offenders, you mean that within the context of evaluating for something other than their sex offenses?"
>
> A.: "I don't believe I said that I spent ten years evaluating sex offenders. I think what I said was in the population that I deal with, between 35 and 45 percent are sex offenders."
>
> Q.: "And could you tell us how many years you've spent evaluating sex offenders for sex offenses?"
>
> A.: "Very recent. In the past couple of months."
>
> Q.: "Two months or three months?"

*A.:* "Yes."

*Q.:* "So you've spent two to three months in evaluating sexual dangerousness?"

*A.:* "Yes."

Following the cross-examination of Dr. Lewis, the Commonwealth rested. The petitioner then moved to strike the testimony of Dr. Lewis on the ground that she did not meet the statutory requirements of a qualified examiner. The judge denied the motion citing two reasons: (1) she was "required by case law to grant a fair amount of deference" to the commissioner of correction, who designated Dr. Lewis as a qualified examiner, and (2) Dr. Lewis's testimony established her credentials as a qualified examiner.

"[Q]ualified examiners are central to the statutory scheme designed to evaluate the likelihood of a sex offender to re-offend." *Johnstone, petitioner,* 453 Mass. 544, 551 (2009), quoting from *Commonwealth* v. *Bradway,* 62 Mass. App. Ct. 280, 283-284 (2004). Because of the importance of their role in G. L. c. 123A proceedings, it is essential that a person designated as a qualified examiner is indeed qualified to give an opinion whether a person is or remains a sexually dangerous person.

We agree that a certain amount of deference should be given to the commissioner of correction's designation of Dr. Lewis as a qualified examiner, and his application of the requirements of G. L. c. 123A, § 1. See *Molly A.* v. *Commissioner of the Dept. of Mental Retardation,* 69 Mass. App. Ct. 267, 280 (2007). That deference, however, does not remove entirely a judge's traditional role in deciding whether a witness should be qualified as an expert. "[T]he question of an expert's qualifications is for the trial judge, and [that] determination will be reversed only on an abuse of discretion or error as matter of law." *Commonwealth* v. *Ruiz,* 442 Mass. 826, 833 (2004), quoting from *Commonwealth* v. *Boyd,* 367 Mass. 169, 182 (1975).

Ordinarily, " '[t]he crucial issue,' in determining whether a witness is qualified to give an expert opinion, 'is whether the witness has sufficient "education, training, experience and familiarity" with the subject matter of the testimony.' " *Commonwealth*

v. *Richardson*, 423 Mass. 180, 183 (1996), quoting from *Mc-Laughlin* v. *Selectmen of Amherst*, 422 Mass. 359, 361-362 (1996). In matters involving proceedings under G. L. c. 123A, however, the judge's determination whether a witness is indeed a qualified examiner is guided by the statutory requirement that the individual have two years' experience in the diagnosis or treatment of sexually aggressive offenders.

Here, the petitioner alerted the Commonwealth (and the judge) prior to Dr. Lewis's testimony that he intended to question Dr. Lewis in regard to whether she met the statutory qualifications. The petitioner stated he would focus on whether Dr. Lewis had, as required by the statute, "two years of experience with the diagnosis or treatment of sexually aggressive offenders."

Despite its awareness of the issue, the Commonwealth failed to establish through its questioning of Dr. Lewis that she met the statutory qualifications of a qualified examiner.[3] Although Dr. Lewis testified that she "ran" a sex offender program for women at M.C.I., Framingham, she was not asked about her role in the program and whether it involved the diagnosis or treatment of sexually aggressive offenders. Dr. Lewis did detail her experiences as a forensic psychologist, but according to her testimony, that experience consisted of evaluating individuals for mental competence to stand trial, their dangerousness to themselves or to others, criminal responsibility, and certain other statutorily required evaluations. Her experience did not include "sexual dangerousness." Perhaps most problematic was Dr. Lewis's testimony on cross-examination that she had spent only the past two or three months evaluating individuals for sexual dangerousness. That testimony was not challenged by the Commonwealth.

In sum, at no point did Dr. Lewis testify that she had "two or more years of experience with diagnosis or treatment of sexually aggressive offenders." She, therefore, did not meet the requirements imposed by G. L. c. 123A as a qualified examiner. Because Dr. Lewis was not a qualified examiner, it was an abuse of discretion for the judge to allow her to testify as a qualified examiner in this matter.[4] Our analysis does not stop

---

[3]Appellate counsel for the Commonwealth was not trial counsel.

[4]The Commonwealth did not argue at trial, nor does it argue on appeal, that

here as we must determine whether the objected-to error was prejudicial.

The Commonwealth argues that the petitioner was not prejudiced because Dr. Lewis's testimony was cumulative of the testimony of Dr. Schnyder-Pierce, who also testified as a qualified examiner, and because the evidence was overwhelming that the petitioner remained a sexually dangerous person who was at a high risk of reoffending. The evidence was, in our view, strong but not overwhelming. Although the petitioner did not testify, a licensed psychologist with considerable experience in G. L. c. 123A proceedings did testify on behalf of the petitioner. He opined that the petitioner was no longer a sexually dangerous person and would not reoffend if released from a secure facility. The procedure that he employed in reaching that opinion matched the procedure followed by Dr. Schnyder-Pierce in reaching her contrary opinion, i.e., they examined the same records and both interviewed the petitioner. Therefore, the jury had two different opinions that were based on the same records and interviews. But the Commonwealth had, in addition, Dr. Lewis's testimony, which should not have been admitted, and which corroborated Dr. Schnyder-Pierce's testimony. Further, we note that the Commonwealth took full advantage of Dr. Lewis's testimony, mentioning it at least five times in its closing argument.

In the circumstances, we cannot say that the objected-to error in admitting Dr. Lewis's testimony "did not influence the jury, or had but very slight effect." *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 n.7 (1999), quoting from *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994). See *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983). Because there must be a new trial, we discuss briefly other issues raised by the petitioner.

2. *Failure to give requested jury instruction.* The petitioner next objects to the judge's failure to instruct the jury that he is presumed not to be sexually dangerous. The Supreme Judicial Court has explicitly stated, however, that "an instruction on the presumption of nonsexual dangerousness is not constitutionally required in a civil commitment proceeding under G. L. c. 123A."

---

even if Dr. Lewis was not qualified to give an opinion as a qualified examiner, she still could have testified as an expert.

*Wyatt, petitioner*, 428 Mass. 347, 352 n.10 (1998). The petitioner's claim in this regard accordingly fails.

Furthermore, the judge effectively communicated the jury's task and the Commonwealth's burden. While instructing the jury, she meticulously explained several times that it is the Commonwealth's burden to prove beyond a reasonable doubt that the petitioner remains sexually dangerous. See *Commonwealth* v. *Drayton*, 386 Mass. 39, 47 (1982).

3. *Restriction of cross-examination and allowance of direct examination testimony.* The petitioner lastly claims that he was denied his right to substantive and procedural due process when the judge restricted his cross-examination of Dr. Schnyder-Pierce and the member of CAB, yet allowed them to testify as to other matters during direct examination. The petitioner's arguments on this point require little discussion, as he offers no explanation why the judge's actions were improper and prejudicial to his case. Instead, he simply lists the testimony he believes was erroneously allowed or restricted. Without legal support, the petitioner's claim does not rise to the level of adequate appellate argument. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). Nevertheless, upon review, the judge's rulings were proper. The testimony excluded on cross-examination was either irrelevant or impermissible hearsay, and the testimony allowed on direct examination was plainly relevant to the jury's determination of sexual dangerousness. The petitioner's claim accordingly fails.

The judgment is reversed, the verdict is set aside, and the matter is remanded to the Superior Court for a new trial.[5]

*So ordered.*

---

[5]In his notice of appeal, the petitioner states that he is appealing from the judgment and the jury verdict. We assume that a judgment was entered even though it is not part of the record before us.