NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-632

COMMONWEALTH

vs.

STEVEN WAYLEIN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial, the defendant, Steven Waylein, was found to be a sexually dangerous person (SDP) and was committed to the Massachusetts Treatment Center for a minimum of one day and a maximum of life. See G. L. c. 123A, § 14 (d). On appeal, in a brief submitted pursuant to Commonwealth v. Moffett, 383 Mass. 201, 208-209 (1981), the defendant claims the trial judge erred by omitting a required jury instruction, admitting excluded testimony, and admitting evidence of prior criminal charges. He also challenges the Commonwealth's reference to a prior finding of sexual dangerousness in their closing argument. We affirm.

Discussion. The defendant properly preserved each of the errors he claims on appeal, thus our review is for prejudicial error. See Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994).

1. Jury instruction. The defendant first claims that the judge erred by denying his multiple requests for an instruction to the jury that they should presume him to be nonsexually dangerous. We disagree. In Wyatt, petitioner, the Supreme Judicial Court restated the principle that neither the Massachusetts Declaration of Rights nor the Federal Constitution required a jury instruction specifically stating that the defendant is presumed innocent in a criminal trial, provided the instructions convey that the jury must base their decisions on the evidence. See Wyatt, petitioner, 428 Mass. 347, 352 n.10 (1998), citing Commonwealth v. Drayton, 386 Mass. 39, 46 (1982). The court then observed that "an instruction on the presumption of non-sexual dangerousness is not constitutionally required in a civil commitment proceeding under G. L. c. 123A." Wyatt, supra. The defendant argues that because those statements appeared in a footnote, they are dicta and are not binding on this court. We need not consider that question, however, because we subsequently held, in LeSage, petitioner, that a specific instruction on the presumption of nonsexual dangerousness is not required, so long as the judge explains that the Commonwealth must prove sexual dangerousness beyond a reasonable doubt. See LeSage, petitioner, 76 Mass. App. Ct. 566, 573-574 (2010). Because the instruction was not required,

2

the judge did not err in denying the defendant's requests.[1]  See

id.

2.  Refusal of expert interview.  The defendant next argues

that the judge improperly permitted several expert witnesses to

testify that in reaching their ultimate conclusions they had not

interviewed him.  The argument is unavailing.  To be sure, prior

to trial the judge granted the defendant's motion in limine to

exclude evidence that he refused to be interviewed.  However,

the judge clarified more than once that the ruling applied only

to references to the defendant's refusal to be interviewed, but

not to the lack of an interview itself.  In fact, both sides

acknowledged that statements in the trial exhibits to that

effect -- such as "I did not interview [the defendant]" -- were

admissible.  During the trial, three experts testified that they

had not interviewed the defendant.  The defense expert's report,

which was admitted into evidence, also included two references

to the lack of an interview.  That notwithstanding, the judge

_____

[1] The defendant cites several cases to support his claim that the
judge should have instructed the jury that a defendant is
presumed to be not sexually dangerous.  See Commonwealth v.
Doucette, 391 Mass. 443, 451-452 (1984); Drayton, 386 Mass. at
46 ("Massachusetts tradition holds that judges must, upon
request, instruct the jury that the defendant is presumed to be
innocent" [quotation omitted]); Commonwealth v. Madeiros, 255
Mass. 304, 315-316 (1926); Commonwealth v. Anderson, 245 Mass.
177, 181 (1923).  Those cases recognize that a judge may provide
that instruction; it is not, however, constitutionally required.
See Commonwealth v. Sleeper, 435 Mass. 581, 600 (2002).

did not err by admitting this evidence.  Because the experts did not state that the defendant refused an interview, the contested evidence did not run afoul of the judge's ruling.

Moreover, we have previously held that permitting an expert to testify that the defendant refused an interview was not necessarily error.  See Commonwealth v. Mazzarino, 81 Mass. App. Ct. 358, 367 (2012).  We reasoned that while due process protections apply in commitment proceedings, they are more limited than in a criminal case.  See id.  Thus, a defendant in commitment proceedings may refuse an interview either based on the psychotherapist-patient privilege or the privilege against self-incrimination, but, if he does so, he may not then offer the opinion of his own expert.  See Johnstone, petitioner, 453 Mass. 544, 552 (2009) (refusal to be interviewed is "effectively penalized" in commitment proceedings).  Similarly, if a petitioner for discharge from commitment refuses an interview, he waives his right to a hearing and his petition may be dismissed.  See Mazzarino, supra, citing G. L. c. 123A, § 9. Nevertheless, the judge's allowance of the expert testimony here did not deprive the defendant of a fair trial where the experts stated only that no interview occurred and in fact made no mention of the defendant's refusal to be interviewed.

3.  Probation records.  The defendant's third claim is that the trial judge erred by allowing the Commonwealth to introduce

4

a probation record, sometimes known as the "Interstate Identification Index" (III report) showing that the defendant was twice charged with failure to register as a sex offender.[2] Both charges had been dismissed. The defendant moved to exclude the III report before trial, and the judge ruled that it was admissible. Because the judge admitted the III report over the defendant's objection, the defendant withdrew his objection to testimony related to the background or significance of the charges. The defense attorney explained that given the court's ruling, she wanted to elicit testimony regarding the charges to give the jury context for the III report entries.[3] That said, the defendant's main argument on appeal is that the III report standing alone lacked probative value and should have been excluded. We perceive no error.

General Laws c. 123A, § 14 (c), provides that, "Juvenile and adult court probation records, . . . and any other evidence tending to show that such person is or is not a sexually

_____

[2] The "Interstate Identification Index System or 'III System' means the cooperative federal-state system for the exchange of criminal history records, and includes . . . to the extent of their participation in such system, the criminal history record repositories of the states and the [Federal Bureau of Investigation]." 28 C.F.R. § 20.3(m) (2022). The III report is maintained by the Federal Bureau of Investigation (FBI) at the National Crime Information Center. See id. See also 28 C.F.R. § 0.85(f) (2022).

[3] Both sides acknowledged at trial that the III report was the only information available to them about the charges.

dangerous person shall be admissible at the trial." Chapter 123A also obliges the court to "supply to the qualified examiners copies of any juvenile and adult court records which shall contain, if available, a history of previous juvenile and adult offenses." G. L. c. 123A, § 13 (b). The judge here classified the III report as an out-of-State probation record, which falls within the express terms of the statute. Moreover, each of the expert witnesses reviewed the III report as part of their evaluation of the defendant. The experts' consideration of the III report is sufficient to meet the standard of relevancy under the statute, and indeed one expert testified that the dismissed charges had at least some influence on her findings while another referenced the charges in his report. See McHoul, petitioner, 445 Mass. 143, 152 n.8 (2005), cert. denied, 547 U.S. 1114 (2006) ("By making [criminal and psychiatric] records and reports admissible at trial, the Legislature made clear that the jury could see at least that portion of what the expert had used in forming an opinion"). In those circumstances, we cannot say that the judge erred or abused her discretion in admitting the III report.[4]

---

[4] The defendant further claims that the Commonwealth failed to properly authenticate the III report because it was an out-of-State document. However, the statute contains no special rules pertaining to out-of-State records or those maintained by the Federal government. See G. L. c. 123A, § 14 (c). Additionally,

4. Commonwealth's closing argument. Finally, the defendant contends that the Commonwealth's closing argument improperly informed the jury that the defendant had previously been found to be sexually dangerous.[5] The trial record does not support the claim. The qualified examiners in this case initially evaluated the defendant in 2019 and 2020, then updated those evaluations in 2021. When discussing the expert evaluations in closing, the Commonwealth stated that "not only did they find that he was sexually dangerous the first time . . . they told you here this week, during this trial, that today he remains a sexually dangerous person." Defense counsel objected and the judge instructed the jury that there was no evidence that the defendant was previously adjudicated sexually dangerous.[6] The prosecutor then explained that her comments may have been poorly worded and that she intended to refer only to the experts' previous 2019 and 2020 opinions that the defendant

_____

pursuant to our rules of evidence, a document may be authenticated by evidence of its "appearance . . . or other distinctive characteristics." Mass. G. Evid. § 901(b)(4) (2023). The III report had several such characteristics including but not limited to a user number, FBI number, and the defendant's social security number.

[5] Because we conclude there was no prejudicial error, we need not address the defendant's claim that several errors cumulatively denied him a fair trial.

[6] We presume that the jury followed the judge's curative instruction. See Mazzarino, 81 Mass. App. Ct. at 364.

7

was sexually dangerous but not that the defendant had actually been previously adjudicated an SDP.  These circumstances undercut the defendant's claim that the prosecutor argued facts not in evidence.

Judgment affirmed.

By the Court (Henry,
  Desmond & Englander, JJ.[7]),

*Joseph F. Stanton*

Clerk

Entered:  August 23, 2023.

---

[7] The panelists are listed in order of seniority.