## Hugo Santos, petitioner.

Barnstable. December 6, 2011. - February 22, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, & GANTS, JJ.

*Sex Offender. Evidence,* Sex offender, Expert opinion, Medical record. *Due Process of Law,* Sex offender.

This court concluded that principles of statutory construction favored an interpretation of G. L. c. 123A, § 9, that avoided constitutional over- breadth by allowing in evidence, at a hearing on an individual's petition for examination and discharge from civil commitment as a sexually danger- ous person, reports prepared by psychiatrists and psychologists who have been retained as expert witnesses by the petitioner in connection with his § 9 petition [568-572]; therefore, a Superior Court judge's exclusion of such reports from a § 9 proceeding was prejudicial error requiring remand of the matter for further proceedings [572-574].

PETITION filed in the Superior Court Department on June 8, 2005.

The case was tried before *Linda E. Giles,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Brendan J. Frigault* for the Commonwealth.

*Michael J. Fellows* for the petitioner.

BOTSFORD, J. This case raises a question concerning G. L. c. 123A, § 9 (§ 9), the section of the sexually dangerous person statute that entitles someone who is committed as a sexually dangerous person annually to file a petition for examination and discharge from the Massachusetts Treatment Center (treatment center). Section 9 provides that at any hearing on such a peti- tion, the written reports prepared by the designated qualified examiners[1] of their examinations of the petitioner are admissible in evidence, as are written annual reviews of the petitioner

---

[1] Qualified examiners are psychiatrists or psychologists, with at least two years of experience working with sexual offenders, who are designated as such by the Commissioner of Correction. G. L. c. 123A, § 1, as appearing in St. 1993, c. 489, § 1.

prepared by the community access board (CAB) under G. L. c. 123A, § 6A,[2] as well as the petitioner's "psychiatric and psychological records." The question presented is whether § 9 also renders admissible the written reports of expert witnesses retained by a § 9 petitioner for purposes of the § 9 proceeding.[3] The petitioner in this case, Hugo Santos (petitioner), filed a petition for examination and discharge under § 9 that was tried before a jury in the Superior Court. The judge ruled at trial that § 9 did not permit the admission of the written reports prepared by the two psychologists whom the petitioner had retained as expert witnesses. The jury ultimately found the petitioner to remain sexually dangerous, and he was not discharged.

The case is before us on further appellate review. The Appeals Court decided, as a matter of statutory construction, that § 9 "requires the admission of the petitioner's experts' reports on the same basis as those of the [qualified examiners]," and that in this case, the exclusion of those reports constituted prejudicial error requiring reversal. *Santos, petitioner*, 78 Mass. App. Ct. 280, 285-286 (2010). The Appeals Court expressed no opinion on the constitutional due process and equal protection claims raised by the petitioner. *Id.* at 285. We conclude that an interpretation of § 9 to bar the admission in evidence of a written report prepared by a petitioner's expert psychiatrist or psychologist, while authorizing introduction of the reports prepared by the qualified examiners and the CAB, would raise substantial due process concerns. As we must interpret statutes wherever possible to avoid constitutional doubts, we construe § 9 to render admissible the petitioner's experts' written reports. We agree with the Appeals Court that the objected-to exclusion of the written reports prepared by the petitioner's experts in this case was prejudicial, and we vacate the judgment of the Superior Court.

---

[2]General Laws c. 123A, § 6A, as appearing in St. 1993, c. 489, § 4, established a five-member community access board (CAB), affiliated with the Department of Correction, which "conduct[s] annual reviews of and prepare[s] reports on the current sexual dangerousness of all persons at the treatment center."

[3]It appears that the petitioner is now deceased, although no suggestion of death was filed in this court. Therefore, the question is moot as to the petitioner. However, because the parties have fully briefed this matter and resolving it would be in the public interest, we decide the issue. See *Boxford* v. *Massachusetts Highway Dep't*, 458 Mass. 596, 601 n.13 (2010), citing *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943).

1. *Background.* On January 29, 2002, the petitioner was committed to the treatment center as a sexually dangerous person after a jury-waived trial held pursuant to G. L. c. 123A, § 14. On June 8, 2005, he filed a petition under § 9 for his discharge. The petition was tried before a jury beginning on March 5, 2007. Before trial, the Commonwealth filed a motion to exclude, as inadmissible hearsay, the written reports prepared by Dr. Leonard Bard and Dr. Robert Prentky, two psychologists retained by the petitioner, each of whom had concluded that the petitioner was no longer a sexually dangerous person.[4] The judge granted the Commonwealth's motion but offered to give a curative instruction to the jury concerning the statutory basis for admission of the qualified examiners' reports. The petitioner's counsel preserved her objection for the record but accepted the instruction.

The Commonwealth's first witness was Andrea Barnes, Ph.D., a CAB member, who testified that in her opinion and the opinion of the other CAB members, the petitioner remained sexually dangerous. During Barnes's testimony, the Commonwealth introduced in evidence a copy of the most recent CAB report concerning the petitioner. After the report was admitted, the judge gave the following instruction:

> "Members of the jury, I just want to point out something that pursuant to the statute dealing with this kind of petition, by law the Legislature has said that the reports of the Community Access Board and the two qualified examiners are admissible in evidence. The reports of the two independent evaluators that are going to be called by the petitioner are not admissible. So I am following the dictates of the statute.
>
> "The written reports of the Community Access Board . . . and the reports of the two qualified examiners, . . . they're going to be exhibits in this case. The reports of the independent evaluators that evaluated [the petitioner] at his request are not going to be exhibits in this case but you will be hearing from those doctors in a testimonial way later in this trial."

[4]The Commonwealth also moved to prohibit the petitioner's experts from testifying to any of his statements on the ground that the statements were inadmissible hearsay. The judge denied this portion of the motion.

The qualified examiners, Dr. Michael Henry and Dr. Paul Zeizel, opined that the petitioner remained sexually dangerous, despite his advanced age, because he had committed a sexual offense in his early sixties, an age at which many other offenders have stopped offending. Their reports were admitted in evidence without a further instruction to the jury.

The petitioner's experts each testified that the petitioner was not likely to reoffend, primarily because only a small percentage of sex offenders recidivate in their seventies, and the petitioner was seventy-three years old at the time of trial. As the judge had indicated to the jury, however, the experts' reports were not admitted in evidence. In his closing, the Commonwealth's attorney referred to the absence of the petitioner's experts' reports, stating, "Doctor Prentky made obvious mistakes in this case. He wrote a report. You're not going to get to see the report for reasons that are not his fault and you shouldn't hold that against him, but I pointed out some things." The jury found that the petitioner remained a sexually dangerous person.

2. *Discussion.* The provisions in § 9 of concern in this case are all contained in the second paragraph of the statute, which we quote in the margin.[5] As the quoted language indicates, § 9 designates certain documents as admissible at a § 9 trial, although they would not be admissible under the common-law rules of evidence because they are hearsay. See *McHoul, petitioner*, 445 Mass. 143, 147 (2005), cert. denied, 547 U.S. 1114 (2006) (*McHoul*); Mass. G. Evid. §§ 801(c), 802 (2011). Specifi-

---

[5]General Laws c. 123A, § 9 (§ 9), provides in relevant part:

"[Following the filing of a petition for examination and discharge from the treatment center] [t]he court shall order the petitioner to be examined by two qualified examiners, who shall conduct examinations, including personal interviews, of the person on whose behalf such petition is filed and file with the court written reports of their examinations and diagnoses, and their recommendations for the disposition of such person. *Said reports shall be admissible in a hearing pursuant to this section.* . . . Evidence of the person's juvenile and adult court and probation records, *psychiatric and psychological records, the department of correction's updated annual progress report of the petition[er], including all relevant materials prepared in connection with the [CAB annual review process under G. L. c. 123A, § 6A]*, and any other evidence that tends to indicate that he is a sexually dangerous person *shall be admissible in a hearing under this section.*" (Emphases added.)

cally included among the documents § 9 makes admissible are the reports of the two qualified examiners who have interviewed the petitioner and reviewed his records, CAB reports, and "[e]vidence of [the petitioner's] . . . psychiatric and psychological records . . . ."[6] G. L. c. 123A, § 9, second par.

The petitioner argues that construing the statute to permit the introduction of reports by the qualified examiners and the CAB, but not by his experts, violates his constitutional rights of equal protection and due process. With respect to due process, he argues that the fundamental fairness of his trial was impaired by the judge's evidentiary ruling, because he could not effectively rebut the Commonwealth's experts' reports with his own. Cf. *Commonwealth* v. *Connors*, 447 Mass. 313, 318 n.8 (2006) (expressing concern that Commonwealth and defendants in c. 123A proceedings be on "equal footing" and noting "disadvantage to one party does in fact occur when there is an imbalance of evidence").

We agree with the petitioner that excluding his experts' reports could create an unfair imbalance of evidence, especially because it would otherwise be difficult for petitioners to respond to the information in the CAB and qualified examiner reports, much of which is hearsay representing a "very radical departure" from our traditional rules of evidence. *McHoul*, 445 Mass. at 147, quoting *Andrews, petitioner*, 368 Mass. 468, 473 (1975). "The authors of the various documents [admissible in § 9 proceedings] are oftentimes not eyewitnesses to everything put in their reports." *McHoul, supra* at 149. "[I]ndeed, very little of th[e] assembled information [in the CAB report] will consist of the reporter's own observations of the petitioner." *Id.* at 150. For instance, at the petitioner's trial in 2007, Dr. Barnes testified about (and included in the CAB report) an offense that occurred in 1964 in California.

---

[6]The catch-all provision for the admission of "any other evidence that tends to indicate that he is a sexually dangerous person," appearing at the end of the portion of § 9 quoted in note 5, *supra*, has been interpreted to permit only the introduction of evidence that is independently admissible under the rules of evidence. See *Commonwealth* v. *Bladsa*, 362 Mass. 539, 541 (1972). See also *Commonwealth* v. *Reese*, 438 Mass. 519, 527 (2003). Because the petitioner's experts' reports do not satisfy any of the exceptions to the hearsay rule, see Mass. G. Evid. §§ 803, 804 (2011), they are not independently admissible and may not be admitted under the catch-all provision of § 9.

We note also that unlike the fact finder in a criminal case, who must decide whether a defendant committed a crime in the past, the fact finder in a § 9 proceeding is charged with predicting whether the petitioner remains sexually dangerous, that is, under the definition of "[s]exually dangerous person" in G. L. c. 123A, § 1, whether it is "likely" that the petitioner will engage in future sexual offenses if released. See *Commonwealth* v. *Boucher*, 438 Mass. 274, 276 (2002) ("In assessing the risk of reoffending, it is for the fact finder to determine what is 'likely' "). Because of the difficulty of predicting future actions, it is particularly important to have a balanced view of the evidence from both sides in order to enhance the accuracy and fairness of the fact finder's decision. The importance of ensuring that fair procedures are employed is heightened by the liberty interests at stake for the petitioner. "While commitment proceedings under c. 123A are civil proceedings, the potential deprivation of liberty to those persons subjected to these proceedings 'mandates that due process protections apply.' " *Commonwealth* v. *DeBella*, 442 Mass. 683, 688 (2004), quoting *Commonwealth* v. *Bruno*, 432 Mass. 489, 502 (2000).

In sum, we agree that serious constitutional questions whether the petitioner's due process rights had been violated would arise if we interpreted § 9 to mean that his experts' reports could not be admitted in evidence at his hearing. We need not finally resolve the constitutional issues, however, because "[i]t is, of course, 'our duty to construe statutes so as to avoid such constitutional difficulties, if reasonable principles of interpretation permit it.' " *Commonwealth* v. *Disler*, 451 Mass. 216, 228 (2008), quoting *School Comm. of Greenfield* v. *Greenfield Educ. Ass'n*, 385 Mass. 70, 79 (1982). See *Doe, Sex Offender Registry Bd. No. 89230* v. *Sex Offender Registry Bd.*, 452 Mass. 764, 770 (2008) (avoiding constitutional question by reading sex offender registration statute to give board discretion to allow indigent petitioner's motion for expert witness funds). For the following reasons, we conclude that the phrase "psychiatric and psychological records," as used in § 9, may reasonably be interpreted to encompass the psychiatric reports prepared by petitioner's experts, obviating the need to address the constitutional issues raised by the petitioner.

Although the language of § 9 refers only to psychiatric and psychological "records," the analogous provision in G. L. c. 123A, § 14 (c) (§ 14 [c]), governing the admissibility of evidence at commitment trials of persons accused of being sexually dangerous, authorizes the admission of both psychiatric and psychological "records *and reports*" (emphasis added).[7] This court has previously noted that the evidentiary provisions of §§ 9 and 14 (c) are comparable. See *McHoul*, 445 Mass. at 149. We construe the two related statutes in a manner that makes them consistent with one another, see *Adams* v. *Adams*, 459 Mass. 361, 373 (2011), quoting *First Nat'l Bank* v. *Bernier*, 50 Mass. App. Ct. 756, 759 (2001), and conclude that the phrase "psychiatric and psychological records" in § 9 should be interpreted to include "reports."[8]

The Commonwealth contends that although there may be no distinction between "records" and "reports," under this court's decision in *McHoul*, *supra*, the phrase "psychiatric and psychological records [and reports]" in § 9 cannot be construed reasonably to include reports prepared by the petitioner's retained experts after the litigation of his § 9 petition for discharge has commenced. Rather, in the Commonwealth's view, the court in *McHoul* interpreted the statutory phrase to refer only to reports and records prepared in the past for purposes independent of the petitioner's § 9 petition and, in particular, the type of reports

---

[7]In full, G. L. c. 123A, § 14 (c), provides:

"Juvenile and adult court probation records, psychiatric and psychological records and reports of the person named in the petition, including the report of any qualified examiner, as defined in [§] 1, and filed under this chapter, police reports relating to such person's prior sexual offenses, incident reports arising out of such person's incarceration or custody, oral or written statements prepared for and to be offered at the trial by the victims of the person who is the subject of the petition and any other evidence tending to show that such person is or is not a sexually dangerous person shall be admissible at the trial if such written information has been provided to opposing counsel reasonably in advance of trial."

[8]When asked at oral argument whether the word "records" in § 9 should be read to include "records and reports" in light of the language of § 14 (c), counsel for the Commonwealth responded that he saw no distinction between the words "records" and "reports," and that "records may be reports, reports may be records."

and records that are included in a petitioner's psychiatric or psychological history that would be examined and relied on by the qualified examiners or the CAB members in conducting their examinations of the petitioner under G. L. c. 123A. In *McHoul*, however, the court was addressing a claim that layered hearsay was required to be redacted from his annual treatment reports and observation reports from the treatment center before they could be admitted in evidence in a § 9 trial. *McHoul*, 445 Mass. at 146-153. The particular reports and records of concern to the petitioner in that case were only ones that had been written or compiled in years past; in contrast to this case, the petitioner in *McHoul* did not seek to have any reports admitted that had been written by his own experts, and we were not asked to determine what constitutes an admissible record under § 9.

The Commonwealth argues also that reading the term "psychiatric or psychological records" to include a petitioner's experts' reports would render "superfluous" the other provisions in § 9 as well as c. 123A, §§ 6A and 14 (*c*), that expressly authorize admission of the reports prepared by the qualified examiners and the CAB. We disagree. While §§ 6A, 9, and 14 (*c*) do make explicit statements about the admissibility of these reports in evidence, the sections also contain a number of separate provisions describing other purposes and functions served by the qualified examiners' and CAB reports in connection with proceedings brought under c. 123A.[9] Given this, it is not surprising that the Legislature chose to address the admissibility of the qualified examiners and CAB reports separately, rather relying on the general category of "psychiatric and psychological records" to cover them.

We return to where this discussion began. We recognize that in the context of an examination and discharge proceeding under

---

[9]For example, the qualified examiners are required by § 9 to "file with the court written reports of their examinations and diagnoses, and their recommendations for the disposition of such person," unlike the reports prepared by any other experts. After describing how annual reports and other relevant materials prepared by the CAB in the discharge of its G. L. c. 123A, § 6A, duties are admissible, § 9 goes on to clarify that "[t]he chief administrative officer of the treatment center or his designee may testify at the hearing regarding the annual report and his recommendations for the disposition of the petition." No express provision in the statute addresses the testimony of any other expert.

§ 9, reading the phrase "psychiatric and psychological rec-ords" to be limited in the manner proposed by the Com-monwealth, and therefore to exclude the reports prepared by a petitioner's own expert witness for purposes of the proceeding itself, is not unreasonable. However, such a reading is not com-pelled. In light of the constitutional doubts that this reading would create, we interpret "psychiatric and psychological rec-ords" to include the reports prepared by psychiatrists and psychologists who have been retained as expert witnesses by the petitioner in connection with his § 9 petition for examina-tion and discharge.[10] Thus, it was error for the trial judge to grant the Commonwealth's motion in limine to exclude from evidence the reports prepared by the petitioner's experts over his objection.[11]

Finally, like the Appeals Court, we are not convinced that the error was nonprejudicial. See *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994). See also *LeSage, petitioner*, 76 Mass. App. Ct. 566, 573 (2010), and cases cited. As the Appeals Court pointed out, making the written reports of the qualified examin-ers and the CAB available to the jury during their deliberations but not doing the same with respect to the petitioner's experts gave the qualified examiners' and CAB members' opinions both accessibility and a weight not afforded the opinions of the petitioner's experts. *Santos, petitioner*, 78 Mass. App. Ct. at 286, citing *Wingate* v. *Emery Air Freight Corp.*, 385 Mass. 402, 407 (1982). Cf. *Commonwealth* v. *McNulty*, 458 Mass. 305, 322 (2010). Moreover, the imbalance between the two sides' experts was heightened by the curative instruction the judge gave at the point the CAB report was admitted in evidence during trial. Although the judge clearly did not so intend, the instruction

---

[10]For the same reasons, we would interpret the cognate phrase in G. L. c. 123A, § 14 (*c*), "psychiatric and psychological records and reports of the person named in the petition," in the same manner.

[11]The petitioner's experts' reports ought to have been admitted, but only on the same basis as those of the qualified examiners and the CAB. As we have previously stated, in order to ensure that experts' reports are not used as a back door for submitting information to the jury that was not introduced in evidence, "the [expert's] report must be redacted prior to its submission to the jury to exclude any facts or data that were not presented in evidence or elicited during the cross-examination of the [expert]." *Commonwealth* v. *Markvart*, 437 Mass. 331, 338, 339 (2002).

could have led the jury to believe that by legislative directive, more weight ought to be given to the conclusions of the Commonwealth's witnesses than to the petitioner's.[12] In the circumstances of this trial, we cannot be certain that the jury would still have found the petitioner sexually dangerous if they had received each side's experts' reports, with their opposing conclusions, and had a fair opportunity to compare them.

3. *Conclusion.* For the reasons stated, the judgment is vacated and the case remanded for proceedings consistent with this opinion.

*So ordered.*

---

[12]The judge told the jury that "*by law the Legislature has said* that the reports of the Community Access Board and the two qualified examiners are admissible in evidence" while, on the other hand, "[t]he reports of the two independent evaluators that are going to be called by the petitioner are not admissible" (emphasis added).

This distinction between each side's experts was highlighted again in the Commonwealth's closing argument, when counsel reminded the jury that it would *not* be receiving the report of Dr. Prentky, one of the petitioner's experts, but nevertheless argued that there were discrepancies in the report that should lead the jury to doubt him. Counsel for the Commonwealth did qualify this statement by noting that the jury would not receive the report for "reasons that are not [Dr. Prentky's] fault and you shouldn't hold that against him," but that qualification may have reinforced the possible message implicit in the judge's curative instruction to the effect that the Legislature has determined the qualified examiners' reports are more significant than the reports prepared by the petitioner's experts.