NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-816                                          Appeals Court

COMMONWEALTH  vs.  CHARLES DINARDO.

No. 16-P-816.

Middlesex.      November 3, 2017. - February 7, 2018.

Present:  Hanlon, Massing, & Wendlandt, JJ.

Sex Offender.  Evidence, Sex offender, Expert opinion, Medical
     report.  Witness, Expert, Psychologist.  Practice, Civil,
     Sex offender, Instructions to jury.

Civil action commenced in the Superior Court Department on
July 5, 2012.

The case was tried before Kenneth W. Salinger, J.

David H. Erickson for the defendant.
Jessica Langsam, Assistant District Attorney, for the
Commonwealth.

WENDLANDT, J.  This appeal presents the question whether,

in connection with a trial to civilly commit an individual as a

sexually dangerous person,[1] the written report of a qualified

_____

[1] G. L. c. 123A, § 1, as amended by St. 1999, c. 74, § 6,
defines "sexually dangerous person" as, inter alia, "[A]ny
person who has been . . . convicted of . . . a sexual offense

forensic psychologist (who is neither a designated qualified examiner nor the defendant's treating psychologist) is admissible as a "psychiatric and psychological record[] and report[] of the person named in the petition."  G. L. c. 123A, § 14(c), inserted by St. 1999, c. 74, § 8.  Concluding that it is and that the defendant's other arguments lack merit, we affirm.

1. Background.  We briefly summarize the relevant facts as found by the trial judge.  In 1989, the defendant, Charles Dinardo, was convicted in Connecticut of aggravated sexual assault, sexual assault of a child, and risk of injury to a minor.  The victim was the defendant's daughter, whom he sexually abused continuously from when she was six years old until she was eighteen, with the exception of a one year hiatus when the victim's mother took her abroad.  The abuse began when she was six or seven years old.  He would place a wire in his own and then the victim's anus while he masturbated.  When she was eight or nine years old and continuing until she was twelve, he engaged in weekly oral and anal sex with her.  Over the next six years, he engaged in weekly sexual contact with the victim. On one occasion, the defendant told an adult male friend that he

and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in sexual offenses if not confined to a secure facility."

could have sex with the victim; the friend proceeded to have oral sex with her. The defendant expressed disappointment that he was not afforded the opportunity to watch. The victim was afraid to tell anyone about the abuse, but when she was eighteen, she began to resist the defendant and ultimately reported the sexual abuse to her therapist. The defendant was arrested, convicted, and sentenced to twelve years of incarceration.

Following his release, the defendant again was arrested in Connecticut after reports were made that he was in a parked van talking to young boys. He was found guilty of breach of the peace, and sentenced to probation; however, he violated the conditions of probation and served a prison sentence.

In 2007, the defendant approached a fourteen year old boy at a train show in Holliston, Massachusetts, and asked to speak to him alone, ostensibly to give him information about trains. When he had the boy alone, the defendant instead remarked, "[s]perm is an energy drink, you know." When the boy did not reply, the defendant stated, "I'd really love to blow you. I'll give you twenty dollars." The boy walked away, told his father, and identified the defendant. The father later reported the incident; the defendant was arrested in Connecticut. During the drive back to Massachusetts, the defendant told the police officer he should have stayed away from the boy, but "his big

mouth had gotten him in trouble again." In a search of the defendant's apartment, the police found a photograph that the defendant had taken of a different boy sitting on a model train. The photograph was captioned "boy who likes to give blow jobs and getting finger fucked by older neighbor-200%." The defendant was convicted in Massachusetts of enticing a child under the age of sixteen and was sentenced to four and one-half to five years in prison.

As the defendant's discharge time neared, the district attorney retained forensic psychologist Dr. Katrin Rouse Weir to conduct a preliminary evaluation to determine whether the district attorney should seek to commit the defendant as a sexually dangerous person. Rouse Weir did not interview the defendant; instead, she reviewed his police reports, probation records, and treatment records. In her report, dated June, 2012, she opined that the defendant suffered from a mental abnormality, pedophilia, and that he was likely to reoffend if released. In July, 2012, the district attorney filed a petition for commitment of the defendant as a sexually dangerous person, pursuant to G. L. c. 123A, § 12(b). The defendant was held at the Massachusetts Treatment Center (treatment center) pending a determination of probable cause that the defendant was a sexually dangerous person, pursuant to G. L. c. 123A, § 12(c).

In January, 2013, following a stipulation to probable cause by the parties, the hearing judge found probable cause. The hearing judge ordered the defendant held for sixty days pending examination and diagnosis by two qualified examiners, pursuant to G. L. c. 123A, § 13(a). The two qualified examiners, Dr. Mark Schaefer and Dr. Greg Belle, each interviewed the defendant. Reflecting on his abuse of his daughter that continued for over a decade, the defendant acknowledged that he abused his daughter and that the police reports were accurate. He stated that (i) he thought the victim would enjoy the abuse, (ii) the abuse would further the bond between them, and (iii) he could not stop himself even though he knew it was wrong. The defendant denied having any sexual contact with the boys with whom he spoke from his van, but admitted soliciting the boy at the train show. While he regretted his inability to keep his mouth shut, he wanted to be part of the teenage boy's sexual experimentation.

In February, 2013, the district attorney moved for trial, pursuant to G. L. c. 123A, § 14(a). The motion was allowed, and the defendant was ordered confined to the treatment center for the duration of the trial. In 2013 and 2014, the defendant changed counsel and sought several continuances.

The district attorney filed a motion in limine to admit Rouse Weir's report at trial, which the defendant opposed. The

trial judge allowed the motion on the ground that Rouse Weir's report was admissible, pursuant to G. L. c. 123A, § 14(c), inserted by St. 1999, c.74, § 8, as a "psychiatric and psychological record[] and report[] of the person named in the petition."

The trial began in August, 2015. Four witnesses offered expert testimony at trial -- the two court-appointed qualified examiners, and two licensed psychologists (Dr. Leonard Bard and Dr. Joseph Plaud) retained by the defendant. Each of their reports was admitted at trial. Schaefer and Belle both opined that the defendant suffered from pedophilia and was likely to reoffend if not confined to a secure facility. Rouse Weir did not testify, but her report was admitted in evidence through the testimony of Schaefer, who testified that he relied, in part, on her report in forming his opinion. Bard and Plaud opined that the defendant did not have a mental abnormality and his risk of reoffense was low.

In September, 2015, the jury found that the Commonwealth had proven beyond a reasonable doubt that the defendant was, at the present time, a sexually dangerous person. The trial judge entered judgment on the jury's verdict and ordered the defendant to be committed to the treatment center for the period of from one day to life. This appeal followed.

Discussion. 1. Admissibility of the probable cause hearing expert's report. On appeal, the defendant argues that the trial judge erred in admitting Rouse Weir's report under § 14(c).

We begin our analysis, as we must, with the words of the statute construed by the ordinary and approved usage of the language. See Commonwealth v. Starkus, 69 Mass. App. Ct. 326, 340 (2007) ("we need look no further than the language of § 14[c]"). See also Commonwealth v. J.A., 478 Mass. 385, 387 (2017) ("To determine the Legislature's intent, we look to the words of the statute, 'construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished'"), quoting from Boston Police Patrolmen's Assn, Inc. v. Boston, 435 Mass. 718, 720 (2002). Section 14(c) provides that certain documentary evidence is admissible at a sexually dangerous person commitment trial with notice to the opposing party:

> "Juvenile and adult court probation records, psychiatric and psychological records and reports of the person named in the petition, including the report of any qualified examiner, as defined in section 1, and filed under this chapter, police reports relating to such person's prior sexual offenses, incident reports arising out of such person's incarceration or custody, oral or written statements prepared for and to be offered at the trial by the victims of the person who is the subject of the petition and any other evidence tending to show that such person is or is not a sexually dangerous person shall be

admissible at the trial if such written information has been provided to opposing counsel reasonably in advance of trial" (emphasis supplied).

On its face, § 14(c) appears to encompass Rouse Weir's report. Rouse Weir is a psychologist and her report is a report of the defendant -- the person named in the petition. Accordingly, her report is encompassed by the plain and ordinary meaning of § 14(c) as a "psychiatric and psychological record[] and report[] of the person named in the petition."

On appeal, the defendant advances several reasons why the plain language of § 14(c) should not be construed to permit the admission of Rouse Weir's report.

a. Statutory limitation on the Commonwealth's experts. First, the respondent asserts that Rouse Weir's report should have not have been admitted because, in sexually dangerous person commitment trials, the Commonwealth's expert evidence is limited to the testimony and reports of the two designated qualified examiners. The argument is without merit. See Commonwealth v. Cowen, 452 Mass. 757, 762 (2008) (testimony of expert, who was not designated qualified examiner, permitted under statutory provision that "any other evidence tending to show that such person is or is not a sexually dangerous person shall be admissible at the trial if such written information has been provided to opposing counsel reasonably in advance of trial"); Commonwealth v. Blake, 454 Mass. 267, 275 (2009)

(Ireland, J., concurring) (rejecting argument that the Commonwealth "lacks statutory authority to present an expert witness other than one who has been designated by the court as a qualified examiner"). Cf. Commonwealth v. Starkus, 69 Mass. App. Ct. at 338-339 (report of Commonwealth's expert psychiatrist, who was not qualified examiner, admissible under § 14[c]).

b. Psychiatric and psychological records and reports. Second, the respondent asserts that "psychiatric and psychological records and reports of the person named in the petition" include only records and reports of the psychiatric specialists who actually examined or treated the person in question. This argument also fails.

The Supreme Judicial Court rejected a similar argument concerning the scope of the cognate phrase in G. L. c. 123A, § 9, pertaining to sexually dangerous person discharge proceedings. Santos, petitioner, 461 Mass. 565, 571-573 (2012). Like § 14(c), § 9 provides that certain reports and records "shall be admissible" at the discharge hearing, including "psychiatric and psychological records."[2] G. L. c. 123A, § 9, as amended by St. 1993, c. 489, § 7. In Santos, the petitioner for

_____

[2] The court held that the phrase "records" in § 9 includes reports because § 14(c) includes "records and reports" and the two statutes must be construed "in a manner that makes them consistent with one another." Santos, 461 Mass. at 571.

discharge sought to introduce the report of a nontreating expert that he had retained for trial. The Commonwealth argued (as the defendant does in the present case) that the term was limited to reports of the committed person's treating psychiatric specialists. Id. at 571-572.

In view of the constitutional due process concerns that the Commonwealth's proposed construction would create, the court construed the phrase to include the petitioner's litigation expert. Id. at 571-573. The court observed that while the annual written reviews by the community access board (CAB) and the reports of the designated qualified examiners are admissible in a § 9 hearing pursuant to G. L. c. 123A, §§ 6A and 9, respectively, no provision expressly permits admission of the petitioner's expert's report. To "avoid [the] constitutional difficulties" that such an imbalance in the evidence would raise, id. at 570 (quotation omitted), the court rejected the Commonwealth's narrow construction of "psychiatric and psychological records" and construed the term broadly to include the civilly committed person's expert report, even though the expert was not the person's treating psychiatrist. Id. at 572-573. In doing do, the court stated that it "would interpret the cognate phrase in G. L. c. 123A, § 14(c), 'psychiatric and psychological records and reports of the person named in the petition,' in the same manner" as it interpreted the term

"psychiatric and psychological records" of § 9.[3]  Id. at 573

n.10.  Accordingly, the defendant's argument that the term

"psychiatric and psychological records and reports" in § 14(c)

excludes the reports of nontreating psychiatric experts is

without merit.  At a minimum, the term includes the report of a

psychiatric or psychological expert retained by the defendant

for purposes of offering expert testimony at the proceeding.

We turn then to the question whether the term extends to

include the report an expert retained by the district attorney

for purposes of the proceeding.  Again, the Supreme Judicial

Court has provided guidance.  In Blake, 454 Mass. at 268, the

court considered the sufficiency of the evidence that the

defendant was a sexually dangerous person.  Five psychologists –

two designated qualified examiners, two experts retained by the

respondent for purposes of the litigation, and one licensed

psychologist retained by the Commonwealth for the probable cause

hearing[4] -- testified at the trial, and their reports were

submitted to the jury.  See id. at 270, 272, 275 (Ireland, J.,

_____

[3] The evidentiary provisions of §§ 9 and 14(c) "are
comparable."  Santos, supra at 571 (2011), citing McHoul,
petitioner, 445 Mass. 143, 149 (2005).  See Commonwealth v.
Felt, 466 Mass. 316, 321 n.7 (2013), quoting from Commonwealth
v. Wynton W., 459 Mass. 745, 747 (2011) ("Where the Legislature
uses the same words in several sections which concern the same
subject matter, the words 'must be presumed to have been used
with the same meaning in each section").

[4] Coincidentally, this was Dr. Rouse Weir.

concurring).  In his concurring opinion, which set forth the court's reasoning on this issue,[5] Justice Ireland rejected the defendant's challenge to the admissibility of the testimony of the Commonwealth's probable cause hearing expert.  See id. at 274-275.  He also observed that reports not offered by qualified examiners are admissible as "'psychiatric and psychological records and reports of the person named in the petition,' whether provided by the Commonwealth or the defendant."  Id. at 275, quoting from G. L. c. 123A, § 14(c).  See, e.g., Commonwealth v. Starkus, 69 Mass. App. Ct. at 338-340 (report of psychiatric expert, who was not designated qualified examiner, admissible under § 14[c]).

We find further support for including the reports of experts retained by the district attorney within the meaning of § 14(c) by reference to similar language in G. L. c. 123A, § 13(b), inserted by St. 1999, c. 74, § 8.  Section 13(b) provides that, during the defendant's temporary commitment after the determination of probable cause, "[t]he district attorney or the attorney general shall provide [the qualified examiners] . . . any psychiatric, psychological, medical or social worker

---

[5] The court was divided on a separate issue regarding the due process implications from the substantial delay in the trial judge's issuance of his decision after completion of the sexually dangerous person trial; however, the court unanimously held that the evidence was sufficient.  See Blake, 454 Mass. at 268.

records of the person named in the petition in the district attorney's or the attorney general's possession." This provision required the district attorney in this case to provide the qualified examiners with Rouse Weir's report, which he did. Because we construe two related statutes "in a manner that makes them consistent with one another," Santos, 461 Mass. at 571, "psychiatric, psychological . . . records of the person" in § 13(b) must have the same meaning as a "psychiatric and psychological records and reports of the person" in § 14(c).

Accordingly, we conclude that the report of an expert psychologist, who is retained by the Commonwealth, is admissible pursuant to § 14(c) even if the psychologist is neither one of the two designated qualified examiners nor the defendant's treating psychiatric specialist. Here, there is no dispute concerning Rouse Weir's qualifications or the methodology she employed, and the admission of her report was not error.[6]

2. Jury instruction. The defendant also argues that the trial judge improperly directed the jury to rely on Rouse Weir's report in response to a jury question. To the contrary, because the Commonwealth introduced Rouse Weir's report in addition to

---

[6] Of course, the trial judge has discretion to determine the admissibility of a particular report based on the usual considerations such as reliability. See Ready, petitioner, 63 Mass. App. Ct. 171, 174-179 (2005); Gammell, petitioner, 86 Mass. App. Ct. 8, 15 (2014).

the opinions of the two designated qualified examiners, the trial judge properly instructed the jury that the jury needed to base their determination as to whether the defendant was a sexually dangerous person on the in-court testimony of a qualified examiner that the jury found credible.  See Johnstone, petitioner, 453 Mass. 544, 552-553 (2009); Green, petitioner, 475 Mass. 624, 629-630 (2016).

At the end of the first day of deliberations, the jury asked whether the Commonwealth was limited to proving pedophilia, or whether they could find that the defendant had another abnormality such as poor impulse control.[7]  The judge responded by properly instructing the jury that they were limited to pedophilia because that was the only abnormality as to which the Commonwealth presented any evidence.  In connection with this instruction, the trial judge referenced Rouse Weir's report because, like the designated qualified examiners, Rouse Weir's report set forth only pedophilia as the mental abnormality.[8]  Moreover, following this answer, the trial judge

---

[7] The jury asked:  "[D]oes the Commonwealth have to prove that Mr. Dinardo has specifically pedophilia or any mental abnormality?  Does the mental abnormality have to be one of the official paraphilia diagnoses from DSM-V or any kind of abnormality such as poor impulse control[?]"

[8] In response to the jury's question, the trial judge responded:

reminded the jury that all of his instructions were important: "[D]on't consider what I'm telling you today in isolation. Follow all of my instructions as I instructed you yesterday taking into mind the clarification I just provided."

Judgment affirmed.

---

"As you all know, the two Commonwealth experts and for that matter the report of Ms. Rouse Weir that's in evidence, the only basis for any of the Commonwealth's witnesses to assert that Mr. Dinardo has a mental abnormality is the assertion that he has pedophilia disorder, and that that is what makes him today to be a sexual menace in the sense that I've defined it.

"And so given that state of the evidence, you have to decide whether you're convinced that the Commonwealth has proved beyond a reasonable doubt on the basis of what those experts have told you that Mr. Dinardo today has a mental abnormality that fits the definition that we've gone over a number of times.

"You could not find that the Commonwealth has met its burden of proof because you find that he has some other kind of paraphilia or some other kind of abnormality such as poor impulse control, because the Commonwealth presented no evidence from any expert psychologist or psychiatrist asserting that Mr. Dinardo has any other kind of mental abnormality. You have to limit yourself to the evidence in this case and decide whether the Commonwealth has or has not proved beyond a reasonable doubt based on that evidence in this case that Mr. Dinardo today has such a mental abnormality."