NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-906

STEVEN WAYLEIN, petitioner.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a trial on his G. L. c. 123A, § 9, petition for release, the petitioner appeals from a jury verdict that he remains a sexually dangerous person (SDP). We affirm.

The petitioner first asserts that the due process concerns identified by the Supreme Judicial Court in Santos, petitioner, 461 Mass. 565, 569 (2012), required the trial judge to admit into evidence a report prepared by a social worker containing the petitioner's release plan. We disagree.

"We review evidentiary rulings for abuse of discretion," Commonwealth v. Denton, 477 Mass. 248, 250 (2017), reversing only if the judge made "a clear error of judgment in weighing the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives" (quotation and citation omitted). L.L. v. Commonwealth, 470

Mass. 169, 185 n.27 (2014).  As the defendant timely objected, we review any error under the prejudicial error standard.  See Commonwealth v. Cruz, 445 Mass. 589, 591 (2005).

Santos contemplated admission of certain expert reports under G. L. c. 123A, § 9, that would otherwise be inadmissible under the common-law rules of evidence.  See Santos, 461 Mass. at 570.  But the social worker whose report is at issue here was a fact witness, not an expert.  She was identified as a fact witness on the joint proposed witness list, and petitioner's counsel confirmed as much at a hearing on a motion in limine regarding the social worker's testimony:

> "[S]he's not going to testify with respect to anything regarding sexual dangerousness.  That's not her role here. The role of [the social worker] is that she wrote a release plan.  It's simply outlining what Mr. Waylein's options are. . . .  She's not going to be giving any kind of opinions on sexual dangerousness.  She's not going to be giving any kind of opinions."

Accordingly, it was not error to exclude the report as inadmissible hearsay.  See id.  Cf. Commonwealth v. Reese, 438 Mass. 519, 527 (2003) ("catchall" exception in G. L. c. 123A, § 14 (c), "authorizes the admission only of evidence that is independently admissible under the rules of evidence").

In any event, the exclusion of the report did not prejudice the petitioner because the release plan it contained was fully presented to the jury.  The social worker was allowed to, and

2

did, testify about the services available to the petitioner if he were to be released. Petitioner's counsel also cross-examined an expert for the Commonwealth on the services available and the social worker's discussion thereof.

The petitioner next asserts error with respect to two portions of the Commonwealth's closing. In considering whether a claimed error in a prosecutor's closing requires reversal, we examine four factors, "(1) whether the defendant seasonably objected; (2) whether the error was limited to collateral issues or went to the heart of the case; (3) what specific or general instructions the judge gave to the jury which may have mitigated the mistake" and, finally, "(4) whether the error, in the circumstances, possibly made a difference in the jury's conclusion" (quotation and citation omitted). Commonwealth v. Lewis, 465 Mass. 119, 130-131 (2013). Because the asserted error was not preserved, we review for a substantial risk of miscarriage of justice, R.B., petitioner, 479 Mass. 712, 713 (2018), and discern none.

The petitioner maintains it was improper for the Commonwealth to compare his two-year course of offending against victim 1 to his having "only offended against [victim 2] once" before he "got caught," because it invited the jury to speculate that he "would have continued to offend against [victim 2] had

3

she not reported the first incident."  Viewed in context, there was no error.  The petitioner had suggested that his offenses against victim 2, compared to those against victim 1, demonstrated "the opposite" of "an escalating pattern."  The challenged statement fairly "point[ed] out the weaknesses of the [petitioner's] case and ma[de] a fair reply to [the petitioner's] closing argument" (quotation and citation omitted).  Commonwealth v. Fernandes, 478 Mass. 725, 741 (2018).  And, by saying "[s]o we don't know had [the petitioner] not been caught what could happen" the Commonwealth -- appropriately -- "marshal[ed] the evidence and suggest[ed] inferences that the jury may draw from it" (quotation and citation omitted).  Commonwealth v. Roy, 464 Mass. 818, 829 (2013).  On this record, it was not error for the Commonwealth to suggest to the jury that the petitioner's conduct toward victim 1 could have been repeated against victim 2.  See Reese, 438 Mass. at 525 n.8 ("The fact that aberrant behavior is abbreviated by law enforcement before it has run its full course can hardly be said to affect the underlying mental condition causing it").

The petitioner also challenges a statement by the Commonwealth suggesting that the recidivism rates associated with the Static-99R are underestimated.  We review for a substantial risk of a miscarriage of justice.  This, too, was a

4

"reasonable and possible" inference based on the evidence at trial.  See Roy, 464 Mass. at 829.  An expert for the Commonwealth testified that the Static-99R recidivism rates included only those offenders whose new crimes were reported, and who were charged or convicted, so those rates do not account for individuals whose offenses are undetected.  It was fair to suggest that recidivism rates may therefore be underestimated.

Furthermore, these challenged statements did not create a substantial risk of a miscarriage of justice.  "Remarks made during closing arguments are considered in the context of the whole argument, the evidence admitted at trial, and the judge's instructions to the jury" (quotation and citation omitted).  Commonwealth v. Nelson, 468 Mass. 1, 10 (2014).  The judge twice instructed the jury that "closing arguments are not evidence."  We presume the jury followed these instructions.  Wyatt, petitioner, 428 Mass. 347, 359 (1998).  And the Commonwealth's case was strong; it presented evidence through three qualified experts that the petitioner's pedophilic disorder was a prominent risk factor associated with an increased risk of sexual reoffense, rose to the level of a "mental abnormality" as defined in G. L. c. 123A, § 1, and resulted in his inability to control his sexual impulses towards children.

Finally, we are unpersuaded by the petitioner's assertion that the burden was impermissibly shifted to him. To begin, the trial judge was not required to give a jury instruction that a petitioner is presumed not sexually dangerous. See Wyatt, 428 Mass. at 352 n.10; LeSage, petitioner, 76 Mass. App. Ct. 566, 573-574 (2010). Turning next to the Commonwealth's statements in opening, they closely tracked the applicable statutory language and "outline[d] in a general way the nature of the case which the counsel expect[ed] to be able to prove or support by evidence" (quotation and citation omitted). Commonwealth v. Phillips, 495 Mass. 491, 498 (2025). The Commonwealth referred to the petitioner as an SDP when outlining the anticipated evidence, saying, "You'll hear evidence that he's committed repetitive and compulsive sexual offenses . . . that he currently suffers from a mental condition that predisposes him to commission of sex offenses, and that because of that and because of a lack of sex offender treatment, [he] is likely to re-offend sexually. . ."

The trial judge's instructions were also replete with reminders that the petitioner had no burden, and that the jurors were to focus on the petitioner in the present (e.g., the Commonwealth must prove the petitioner to be a sexually dangerous person "today," "at present," "presently," "at this

6

time," "now," or "currently").  The trial judge further instructed that the petitioner had "no burden to prove anything in this case.  The burden of proof never shifts from the Commonwealth to the petitioner.  The burden of proof is on the Commonwealth and it stays on the Commonwealth throughout the trial."  He also instructed that "the Commonwealth has the burden of proof beyond a reasonable doubt in this case.  [The petitioner] is not required to prove that he is not sexually dangerous."  We again presume the jury followed these instructions, Wyatt, 428 Mass. at 359, and conclude "no reasonable juror could have understood that the defendant was required to prove anything."  See Commonwealth v. Sleeper, 435 Mass. 581, 600 (2002).

Judgment affirmed.

By the Court (Rubin, Walsh & Hershfang, JJ.[1]),

Clerk

Entered:  March 12, 2026.

---

[1] The panelists are listed in order of seniority.