NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1155

JOSEPH SANCHES, petitioner.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The petitioner, Joseph Sanches, filed a petition under

G. L. c. 123A, § 9, seeking to be discharged from his civil

commitment to the Massachusetts Treatment Center (MTC) as a

sexually dangerous person (SDP).  A Superior Court jury found

that that the petitioner remained a sexually dangerous person,

and his commitment was continued.  On appeal, the petitioner

contends that several evidentiary rulings deprived him of the

right to a fair trial.  We affirm.

Background.  The petitioner was convicted of crimes

relating to sexual misconduct occurring on three occasions

between 1994 and 2015.  In February 1994, he pleaded guilty to

charges of rape, kidnapping, indecent assault and battery on a

person over fourteen, and larceny under $250, after he assaulted

a twenty-six year old woman he had approached at a gasoline

station and offered a ride home.  In August 1994, the petitioner pleaded guilty to charges of rape and indecent assault and battery on a person over fourteen following his assault of a seventeen year old girl.  In 2015, the petitioner pleaded guilty to three counts of indecent assault and battery on a child under fourteen arising from offenses he committed while on probation, when he sexually assaulted the thirteen year old daughter of a woman he was dating.

In April 2019, the petitioner was adjudicated an SDP and civilly committed to the MTC.  One month later, he filed a petition for hearing and discharge pursuant to G. L. c. 123A, § 9.  A jury trial on the petition was held over six days in March 2024.  The Commonwealth presented testimony from three experts, two of whom were qualified examiners (QEs), Dr. Gregory Belle and Dr. Katrina Colistra.  The petitioner did not call any experts to rebut the QEs' opinions concerning his sexual dangerousness, instead calling three witnesses who testified about the services, supports, and probation conditions that would be in place upon his release:  a probation officer, a community reentry advocate, and a licensed clinical social worker retained by the petitioner's attorneys to assist him with preparing a release plan.  On March 25, 2024, the jury returned

2

a verdict that the petitioner remains an SDP and his commitment was continued.[1]

Discussion. 1. Static-99R labels and metrics. At trial, the QEs testified to the probability of the petitioner sexually reoffending based in part on research drawn from the Static-99R, "an actuarial tool, designed to predict the recidivism risk of sexual offenses in adult male sex offenders who have been convicted of at least one sexual offense." Commonwealth v. George, 477 Mass. 331, 335 n.2 (2017). Dr. Belle explained that the Static-99R uses "ten static variables" to generate a numerical score, which in turn corresponds to a percentage indicating an estimate of an offender's relative recidivism risk. On appeal, the petitioner contends that it was error to

---

[1] A "sexually dangerous person" is defined, in relevant part, as

"any person who has been . . . convicted of . . . a sexual offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in sexual offenses if not confined to a secure facility . . . [or] previously adjudicated as such by a court of the commonwealth and whose misconduct in sexual matters indicates a general lack of power to control his sexual impulses, as evidenced by repetitive or compulsive sexual misconduct by either violence against any victim, or aggression against any victim under the age of 16 years, and who, as a result, is likely to attack or otherwise inflict injury on such victims because of his uncontrolled or uncontrollable desires."

G. L. c. 123A, § 1.

admit three aspects of the QEs' testimony, along with related documentary evidence, regarding his Static-99R results: (1) the nominal risk label classifying his risk to sexually reoffend as "well above average"; (2) the comparative estimate that he was 3.77 times more likely to reoffend than the average offender assessed with the Static-99R; and (3) the extrapolated twenty-year recidivism rate. Because the petitioner preserved these issues for appeal, we review to determine if the admission of this evidence was error, and, if so, whether the error was prejudicial.[2] See Commonwealth v. Cruz, 445 Mass. 589, 591 (2005).

The petitioner's challenge to the evidence describing his recidivism risk as "well above average" relies on Commonwealth v. George, 477 Mass. 331, 339-340 (2017), in which the Supreme Judicial Court held that the previously used Static-99R nominal risk categories "lack[ed] probative value" and were inadmissible because they were insufficiently defined and did not correspond

---

[2] The Commonwealth argues that the petitioner waived his challenge to the extrapolated twenty-year recidivism rate because, in a motion in limine, he stated that he did not oppose the admission "of the [Static-99R] factors, [his] score, or the absolute recidivism rates associated with his score." However, in the same motion in limine, the petitioner expressly sought to exclude nominal risk labels, percentile ranks, and relative risk ratios, and addressed the twenty-year extrapolated recidivism rate in discussing relative risk ratios. Notwithstanding, even assuming that the issue was not fully preserved, as discussed supra, it fails on the merits.

to consistent empirical benchmarks.  The Court noted, however, that the test developers were working on new Static-99R risk category labels to address these shortcomings and took "no position on the admissibility" of the new labels.  Id. at 340 n.8.

Here, the new labels differ from those found inadmissible in George because they are explicitly tied to supporting empirical data indicating how an offender's score relates to the recidivism rates of similarly situated offenders.  See George, 477 Mass. at 340 n.8, quoting Hanson, Babchishin, Helmus, Thornton, & Phenix, Communicating the Results of Criterion Referenced Prediction Measures:  Risk Categories for the Static-99R and Static-2000R Sexual Offender Risk Assessment Tools, 29 Psychological Assessment 582, 592 (2017) ("new risk categories 'have sufficiently improved conceptual coherence and have sufficient empirical support to replace the original categories'").  Because the new labels address the principal concern identified in George -- the absence of a clear and standardized meaning -- they are probative in assessing the petitioner's likelihood of committing another sexual offense.  Moreover, the probative value is not substantially outweighed by the danger of unfair prejudice, where, as here, Dr. Belle testified to the actuarial nature of the Static-99R and

5

explained its limitations, including that it is "[o]ne piece of the larger puzzle. . ." in assessing sexual dangerousness and does not "tell . . . an individual's risk to re-offend . . . ." See Mass. G. Evid. § 403 (2024).

To the extent that the petitioner contends that the revised labels "evoke[] bias and emotion," and thus preclude a fair, individualized assessment of recidivism risk, such concerns go to the weight of the evidence rather than its admissibility. See Commonwealth v. Rintala, 488 Mass. 421, 429 (2021) (contention that expert's "opinion was based on inadequate information goes to the weight and not the admissibility of the testimony"). Expert testimony routinely relies on statistical comparisons and actuarial data, see, e.g., Commonwealth v. Andre, 106 Mass. App. Ct. 1, 9 (2025), and any perceived limitations of the data can be explored on cross-examination. See Commonwealth v. Bradway, 62 Mass. App. Ct. 280, 289 (2004) ("A qualified examiner's testimony is, of course, subject to the test of rigorous cross-examination"). Indeed, the petitioner's counsel thoroughly explored those limitations when Dr. Belle was cross-examined.

The same reasoning applies to the petitioner's challenges to the comparative estimate that he is 3.77 times more likely to sexually reoffend than the average offender assessed by the

6

Static-99R and to the twenty-year extrapolated recidivism rates. The petitioner's contention that this evidence lacked probative value because it provides only a group-based rather than individualized estimate, once again goes to the weight of the evidence rather than its admissibility. See Rintala, 488 Mass. at 429. We note that in his detailed order on the admission of this evidence, the judge ordered that the "limitations of the Static-99R must be explained to the jury." We therefore discern no error in admitting the nominal risk label, comparative percentage estimate, or extrapolated twenty-year recidivism rate. See Cruz, 445 Mass. at 594-595.

Even assuming arguendo that admission of this evidence was error, the petitioner has not demonstrated prejudice. As noted above, Dr. Belle testified that the Static-99R provides only a group-based estimate and does not predict an individual's precise risk of reoffense. Additionally, the QEs did not rely exclusively on the Static-99R and its risk categories in forming their opinions, but also considered the petitioner's criminal history, incarceration records, treatment history, and mental health diagnoses. From this other evidence, the jury could have rationally concluded that the petitioner remained a sexually dangerous person and any emphasis on risk labels or percentages was unlikely to have influenced their decision.

7

2.  Failure to admit written release plan.  The petitioner also argues that the judge erred and "created a significant imbalance in the evidence" by excluding the written release plan prepared by the social worker who testified on his behalf but admitting the written reports of the Commonwealth's experts criticizing the plan.  Although the petitioner claims the plan was excluded over his objection, he did not substantiate this claim with a citation to the relevant portion of the record.[3] See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019).  We therefore "review any error for a substantial likelihood of a miscarriage of justice."  Commonwealth v. Brown, 496 Mass. 287, 295 (2025).

SDP proceedings depart from the ordinary rules of evidence insofar as the "Legislature has enacted a special set of statutory exceptions to the hearsay rule that apply in SDP proceedings."  Commonwealth v. Mackie, 100 Mass. App. Ct. 78, 84 (2021).  One such exception provides that a petitioner's "psychiatric and psychological records," including reports by the Commonwealth's QEs, are admissible even though they would ordinarily be excluded as hearsay under common-law evidentiary rules.  See Santos, petitioner, 461 Mass. 565, 568-569 (2012),

---

[3] Our independent review of the record reveals no opposition filed, no trial objection, and no transcript of the hearing on the motions in limine.

8

quoting G. L. c. 123A, § 9, second par.  To prevent "an unfair imbalance of evidence," the Supreme Judicial Court has construed the term "psychiatric and psychological records" to include reports prepared by a petitioner's own experts.  Santos, petitioner, 461 Mass. at 569.  Here, where the petitioner's social worker was not testifying to the petitioner's sexual dangerousness, the release plan she created was not admissible pursuant to the hearsay exceptions in SDP proceedings.  See Commonwealth v. Reese, 438 Mass. 519, 527 (2003).

Additionally, the petitioner cannot show prejudice flowing from the exclusion of the written release plan.  The social worker was permitted to testify about the release planning process and specific components of the petitioner's plan, and the Commonwealth's expert witnesses were subject to cross-examination about any critiques of the plan.  For these reasons, we conclude that the release plan was properly excluded, and such exclusion did not give rise to a substantial risk of a

miscarriage of justice.

Judgment affirmed.

By the Court (Neyman,
  D'Angelo & Allen, JJ.[4]),

Clerk

Entered:  March 19, 2026.

---

[4] The panelists are listed in order of seniority.